IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:09-CV-00029-O |
| | § | |
| PHILIPS ELECTRONICS NORTH AMERICA | § | **JURY TRIAL DEMANDED** |
| CORPORATION and UNIVERSAL LIGHTING | § | |
| TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION, AND REQUEST FOR EXPEDITED HEARING

On August 19, 2010, the Court issued its Memorandum Opinion and Order (Dkt. No. 101) (hereafter, "Opinion" or "Op."), construing the following limitation: "voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals" (sometimes referred to in shorthand fashion as the "voltage source limitation"). The Court found this limitation indefinite and therefore invalidated the asserted claims.

Plaintiff respectfully asks this Court to reconsider its ruling. Plaintiff also requests a brief opportunity (no more than 30 minutes per side) to be heard on this Motion. As shown below, the Opinion raises a number of questions about whether or not Plaintiff's arguments and evidence were properly understood and characterized by the Court. Further, Plaintiff seeks to clarify whether the "clear and convincing" standard, which applies to all indefiniteness findings but is not referenced in the Opinion, was properly considered.

If the Court is inclined to grant a hearing, Plaintiff requests that such hearing be set on an expedited basis to preserve the possibility that the existing January 2011 trial date might be salvaged. If the Court is inclined to deny this Motion, then Plaintiff likewise requests that such Order be made on an expedited basis.

I.  **The Opinion places undue emphasis on the words "voltage source" and improperly criticizes Plaintiff's expert testimony.**

In deciding whether the claim limitation connotes sufficient structure to one skilled in the art, Plaintiff emphasized the need to consider *all* of the limitation's claim language: "[T]he Court should consider: (a) all of the recited claim language, including nouns, adjectival modifiers, and functional descriptions, and (b) whether that claim language has an understood meaning in the art when read in the context of the specification." Pl.'s Opening Br. (Dkt. No. 84) at 15, citing *Linear Tech. Corp. v. Impala Linear Corp.,* 379 F3d 1311, 1320 (Fed. Cir. 2004); *see also* Pl.'s Opening Br. at 11 ("claim language that further defines a generic term, such as nouns or adjectival qualifications that appear *before* or *after* the word 'means,' can add or suggest sufficient structure to avoid § 112, P 6 treatment") (emphasis in original), citing *Mass. Inst. of Tech. ("M.I.T.") v. Abacus Software,* 462 F.3d 1344, 1354 (Fed. Cir. 2006).

At times, the Court appears to acknowledge Plaintiff's position on this point. *See, e.g.,* Op. at 6. But in reaching its ultimate conclusion, the Court appears to discount the importance of the functional language following "means" and instead focuses its analysis on whether the two words "voltage source" connote sufficient structure:

- "Lighting Ballast argues that 'voltage source' connotes sufficient structure to one skilled in the art ...." Op. at 9.

- "Lighting Ballast argues that . . . the term 'voltage source' has an understood meaning in the art when read in the context of the specification." Op. at 9.

- "Lighting Ballast argues, as it must in order to avoid section 112, ¶ 6, that 'voltage source' connotes sufficient structure . . . ." Op. at 11.

- "Lighting Ballast[] argu[es] that 'voltage source' connotes sufficient structure to avoid means-plus-function construction . . . ." Op. at 11.

To be clear, Plaintiff does not now argue, and has *never* argued, that the words "voltage source," in and of themselves, connote sufficient structure. Rather, in accordance with Federal Circuit precedent, Plaintiff and its experts have posited (without opposition from anyone skilled in the

2

art) that the entirety of the voltage source *limitation (i.e.* "voltage source means providing a constant or variable magnitude[1] DC voltage between the DC input terminals") connotes sufficient structure. The Federal Circuit has criticized district courts that improperly focus on single words in a limitation instead of considering all of the words that form the limitation:

> [T]he district court erred as a matter of law. The primary source of this error lies in the district court's reliance on single words of the limitations, e.g., "circuit," as opposed to the limitations as a whole, e.g., "a first interface circuit for receiving keyboard and cursor control device signals from the workstation."

*Apex Inc. v. Raritan Comp., Inc.,* 325 F.3d 1364, 1372-73 (Fed. Cir. 2003) (limitation containing generic word "circuit" connoted sufficient structure to avoid § 112, P 6).

At other points, the Court appears to criticize Plaintiff for attempting to rely, at least in part, on the limitation's functional language to avoid means-plus-function treatment. *See, e.g.,* Op. at 11 ("Lighting Ballast argues . . . that 'voltage source' connotes sufficient structure . . . . *However*, in order to come to this conclusion, *Plaintiff uses the recited function . . .*") (emphasis added); *see also* Op. at 11-12 ("Lighting Ballast's argument that 'voltage source' connotes sufficient structure to avoid means-plus-function construction is problematic for other reasons as well . . . . Plaintiff relies on the description of the function . . . ."). But this approach has been repeatedly endorsed by the Federal Circuit. *See, e.g., M.I.T.,* 462 F.3d at 1355-56 (relying on limitation's functional description to conclude that disputed term connoted sufficient structure to one skilled in art); *Linear Tech.,* 379 F.3d at 1320-21 (same); *Apex,* 325 F.3d at 1373 (same).

Next, the Court appears to criticize Plaintiff for relying on expert testimony. For example, the Court states: "Lighting Ballast argues, as it must in order to avoid section 112, ¶ 6, that 'voltage source' connotes sufficient structure, in this case, a rectifier. However, in order to come

---

[1] Defendant repeatedly misquoted this claim element by omitting the word "magnitude." Def.'s Opening Br. (Dkt, No. 85) at 16 (two times) and 18. This is significant because the "constant or variable *magnitude*" of the DC voltage is a direct function of the disputed rectifier and therefore bears on the parties' dispute about the rectifier. Defendant also stated, incorrectly, that "the term 'rectifier' does not appear . . . anywhere in the specification . . . of the '529 patent." Def.'s Opening Br. at 19. To the contrary, the patent discloses a rectifier at Col.1, ln 40.

to this conclusion, Plaintiff uses the recited function along with inventor and expert testimony .. . ." Op. at 11 (emphasis added). But again, the Federal Circuit has endorsed this approach, as it is the best way to determine what the claim language conveys to one skilled in the art. *See M.I.T.*, 462 F.3d at 1355-56 (majority op.) and 1363-64 (Michel, C.J., dissenting).

Then, the Court discounts or misconstrues the unchallenged expert testimony of record. For example, the Court states:

> Lighting Ballast does not point the Court to any evidence, intrinsic or extrinsic, that the term "voltage source" is commonly used in the electronic ballast industry to mean a rectifier[,] ... [and t]here is no indication that "voltage source" is often used synonymously with the term "rectifier" by those of ordinary skill in the electronic ballast industry.

Op. at 11-12. It is true that Dr. Roberts and Mr. Bobel did not use the magic word "synonymous." But Mssrs. Roberts and Bobel went further than that, stating that a rectifier is ***the only thing*** that a lighting ballast would ever use to convert AC from the power line into DC:

> The "voltage source" limitation connotes, or suggests, to me, and would connote to anyone skilled in the art, the structure of a rectifier with its input terminals connected to an AC power line and with its output terminals connected to the DC input terminals. In other words, the only way for a lighting ballast to convert AC into DC . . . is through a rectifier . . . AC power is converted into DC power through the use of a rectifier . . . The only structure in a lighting ballast that can perform [this] function is a rectifier.

Roberts Dec. (Dkt. No. 84-7) at 7-8. Similarly, Bobel testified that the voltage source limitation connotes the structure of a rectifier to anyone skilled in the art, and he explained that ***in every instance*** where a lighting ballast converts AC to DC, it does so through the use of a rectifier. Bobel Depo. (Dkt. No. 84-3) at 226-34; *see also* Pl.'s Opening Br. (Dkt. No. 84) at 15.

The Court even concedes that the claim language "refers . . . inferentially to the function of a rectifier" (Op. at 12) but nevertheless concludes that this is insufficient to connote structure to one skilled in the art, even in the face of unchallenged expert testimony to the contrary. Such a conclusion runs counter to Federal Circuit precedent, including *M.I.T.* and *Linear Tech.*

Finally, the Court relies on *Nilssen v. Motorola, Inc.* (Op. at 11) to conclude that the voltage source limitation is subject to § 112, P 6, even though the plaintiff in *Nilssen* offered no expert testimony in support of its position that "source means" connoted structure to one skilled in the art. *See Nilssen v. Motorola, Inc.*, 80 F. Supp. 2d 921, 924 (N.D. Ill. Jan. 5, 2000) (making no reference to expert testimony in its discussion of "source means"); *see also Nilssen v. Motorola, Inc.,* 130 F. Supp. 2d 976, 978 (N.D. Ill. Apr. 7, 2000) (same).

Moreover, *Nilssen's* precedential value is suspect. As a LexisNexis Shepard's search reveals, the *Nilssen* line of cases has a checkered past that includes multiple patents, lawsuits, and judges, inconsistent *Markman* rulings, multiple appeals to both the Federal and Seventh Circuits, the court-ordered division of a single case into multiple cases, the subsequent court-ordered reconsolidation of those cases, threatened sanctions against an overly-litigious plaintiff, and, ironically, the grant of plaintiff's Motion to Reconsider, which resulted in changes to portions of the court's claim construction order.

In fact, the *Nilssen* opinion was singled out by the Federal Circuit as an anomaly, whereby the court reached a result contrary to that of numerous other courts:

> Several courts have determined that the term "circuit" connotes sufficiently definite structure to those skilled in the art. *See* Nilssen v. Magnetek, Inc., 1999 U.S. Dist. LEXIS 16718, 1999 WL 982966, * 9 (N.D. Ill. 1999) (considering term "circuit means"); CellNet Data Sys., Inc, v. Itron, Inc., 17 F. Supp. 2d 1100, 1109 (N.D. Cal, 1998) (same); Database Excelleration Sys. Inc, v. Imperial Technology Inc., 1998 U.S. Dist. LEXIS 19038, 48 USPQ2d 1533, 1537 (N.D. Cal. 1998) (considering term "control circuit"); ***but see*** Nilssen v. Motorola, Inc., 80 F, Supp. 2d 921 (N.D. Ill. 2000) (holding that the term "circuit" is so generic that by itself it conveys no structure at all).

*Apex,* 325 F,3d at 1373 and n.1 (emphasis added). Nevertheless, *Nilssen is* helpful to the present analysis in at least one respect: it describes the basic operation of an electronic ballast; i.e. it states that which is obvious to those skilled in the art of electronic ballasts:

> Electronic ballasts are a means of starting and powering fluorescent lights. Conventional 60 hertz ("Hz") alternating current ("AC") powers an electronic

5

>ballast that comprises three parts that stand between the power supply and the fluorescent lamp: a rectifier, an inverter and an output stage. **Current flows to the rectifier, which converts the AC voltage into direct current ("DC") voltage.** That voltage is then "inverted" (reconverted to AC voltage) at the high frequency of 30,000 Hz. Then at the output stage the voltage is "conditioned" and raised to the level necessary to ignite the fluorescent lamps. Because more power is needed to ignite the lamps than for continued operation, the electronic ballast reduces and stabilizes the voltage once the lamps are ignited.

*Nilssen,* 80 F. Supp. 2d at 924-25 (N.D. Ill. 2000) (emphasis added).

A 2007 case from the Ninth Circuit, in which the court published the Claim Construction Report and Recommendations of Special Master Robert L. Harmon, is on point. Harmon is a patent lawyer, an electrical engineer, and a distinguished commentator on patent law. He is the author of an authoritative treatise on patent law: PATENTS AND THE FEDERAL CIRCUIT (BNA 9th ed. 2009). He is also the author of HARMON ON PATENTS: BLACK LETTER LAW AND COMMENTARY (BNA 2007). In his report for that case, he stated:

>[I]t would be illogical to assume that the drafter of the `646 patent intended "power supply means" to be construed as a [means-plus-function] element. The only rational conclusion is that the drafter was relying on the highly likely proposition that, in the context of the claimed invention, a person of ordinary skill in the art would recognize that "power supply" connotes a well understood class of structures that are known and used in RF converting systems.
>. . .
>[T]he "power supply means" element of the asserted claims ... does not denote a specific structure, but it is understood by persons of skill in the RF converter system art to designate a broad class of structures that supply power appropriate to the claimed system.
>. . .
>Any active electronic circuit will have a power supply appropriate to its needs. Unless it is the power supply itself that is the distinguishing feature (or among the distinguishing features) of the claimed invention, the point is moot. The [Special Master] would be astonished if either side were to proffer expert testimony to the effect that . . . the accused systems did not have a power supply.

*Comtech EF Data Corp, v. Radyne Corp.,* 2007 U.S. Dist. LEXIS 97038, No. CV-06-1132 - PHX-MHM at *33-38 (D. Ariz. Oct. 12, 2007).

6

## II.      The specification's reference to an AC power line satisfies this Court's test.

For the above reasons, Plaintiff respectfully submits that the Court should never reach the next step of the means-plus-function analysis, whereby the Court must identify corresponding structure. Nor does Plaintiff necessarily agree with the Court's interpretation and application of *Atmel*.[2] Nevertheless, even under the Court's formulation of the *Atmel* test (*see* Op. at 13), the '529 Patent discloses sufficient structure to satisfy that test. Specifically, the patent discloses an AC power line. *See, e.g.,* Col. 1, ln. 65.

Under the Court's test, expert testimony cannot make up for "a total omission of structure." *See* Op. at 13. But "as long as there is disclosure of structure, the written description . . . need not explicitly describe the structure; rather, disclosure of the structure may be implicit . . . ." Op. at 13. In other words, according to the Court, the specification must disclose at least *some* structure; then, and only then, a party may rely on expert testimony to flesh out the sufficiency of that disclosure. *See* Op. at 13; *see also Atmel,* 198 F.3d at 1382; *Creo Prods.,* 305 F.3d at 1347 (Fed. Cir. 2002) ("Under our case law interpreting § 112, P 6, knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness.").

In this case, the Court acknowledges, but then discounts, the disclosure of an AC power line: *"Lighting Ballast directs the Court to several references in the 529 Patent to* drawing power from *a power line source . . . .* **Otherwise,** Lighting Ballast does not point the Court to any

---

[2] *See Atmel Corp., v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1383 (Fed. Cir, 1999) ("[T]he district court erred by failing to consider the knowledge of one skilled in the art that indicated, based on unrefuted testimony, that the specification disclosed sufficient structure corresponding to the high-voltage means limitation."); s*ee also Aristocrat Techs. Austl. Pty. Ltd v. Multimedia Games, Inc.,* 266 Fed. Appx. 942, 946-47 (Fed. Cir. 2008) ("The law does not require that structure be explicitly identified as long as a person of ordinary skill in the art would understand what structure is identified in the specification."), citing *Atmel; Creo Prods. v. Presstek, Inc.,* 305 F.3d 1337, 1347-48 (Fed. Cir. 2002) (relying on fact that "[plaintiff]'s expert offered unrebutted testimony" to conclude that structure was "implicit in the disclosure"), citing *Atmel; S3 Inc. v. nVIDIA Corp.,* 259 F.3d 1364, 1370-71 (Fed. Cir. 2001) (reversing district court's invalidity ruling and explaining that "patent documents need not include subject matter that is known in the field of the invention and is in the prior art, for patents are written for persons experienced in the field of the invention").

language in the 529 patent that discloses a structure." Op. at 14 (emphasis added). But under this Court's articulated test, Plaintiff need not disclose any *other* (i.e. *additional*) structure. Rather, once "a structure" has been identified, Plaintiff may properly rely on the uncontroverted expert testimony of Mr. Bobel and Dr. Roberts to "flesh out" the sufficiency of that structure.

The Court's explanation of *In re Dossel* does not clarify this apparent inconsistency. The Court discusses *Dossel* as follows:

> [T]he description described the structure of a computer by its functions - "clearly, a unit which receives digital data, performs complex mathematical computations and outputs the results to a display must be implemented by or on a general or special purpose computer." ... **"[In] the medical imaging field, it is well within the realm of common experience that computers are used to generate images for display by mathematically processing digital input."**

Op. at 15, quoting *Dossel* (emphasis added). But the words underlined above could read:

> **In the electronic lighting ballast field, it is well within the realm of common experience that rectifiers are used to provide DC voltage for use during the ballast's initial startup phase by converting AC from a power line into DC for use as a DC supply voltage.**

The Court also suggests that Plaintiff failed to "point the Court to any language in the specification of the '529 Patent describing the function of a rectifier." Op. at 15 n.3. But the very purpose of a rectifier in a lighting ballast -- to provide a DC voltage to the DC input terminals -- is effectively described in the claim language itself. *See* '529 Patent at Col. 11, ln. 54-56 and Col. 14, ln. 24-26. That function is likewise described in the specification: (a) providing a DC voltage to a circuit[3] (b) upon receiving power from an AC power line.[4]

Moreover, the patent is directed to those skilled in the art such that the basic function of a rectifier need not be described. *See S3 Inc.,* 259 F.3d at 1371 ("Although an accommodation to

---

[3] *See, e.g.,* Col. 2, in. 22, which was not specifically cited in Plaintiff's claim construction briefing but which is identical to the disputed claim language at Col. 11, ln. 54-56 and Col. 14, ln. 24-26, which was referenced in the parties' briefs.
[4] *See, e.g.,* Col. 1, ln. 64-65, which was cited in Pf's Responsive Br. (Dkt. No. 87) at 3; *see also* Pl.'s Opening Br. (Dkt. No. 84) at 16.

the 'common experience' of lay persons may be feasible, it is an unnecessary burden for inventors and has long been rejected as a requirement of patent disclosures."); *see also* The New IEEE Standard Dictionary of Electrical and Electronics Terms, 5th ed. (1993) at 798 (def. of rectification: "The term used to designate the process by which electric energy is transferred from an alternating-current circuit to a direct-current circuit."). Defendants themselves acknowledged that power flowing from an AC power line must be "rectified" (i.e. by a rectifier) to convert it to DC. Def.'s Opening Br. (Dkt. No. 85) at 19, quoting Bobel's deposition.

Having rejected Plaintiff's structural references to an AC power line, the Court proceeds to explain why *Biomedino* requires a finding of indefiniteness under these facts. But *Biomedino* is distinguishable and does not fit the facts of this case. *Biomedino* stands for the proposition that expert testimony may not salvage an otherwise indefinite claim simply because an one skilled in the art could "fill the gap" with *any number of structures*. In other words, *Biomedino* applies when a plaintiff improperly attempts to supply missing structure by suggesting that one skilled in the art could readily "envision *various types* of equipment" or any number of "known *methods* [or] *techniques . . .*" to serve the function in question. *Biomedino, LLC v. Waters Techs. Corp., 490* F.3d 946, 949, 951 (Fed. Cir. 2007) (emphasis added to highlight plural form). Plaintiff has made no such argument in this case. A rectifier is not simply one of many known structures that can serve the function in question. Rather, Roberts and Bobel stated unequivocally and without opposition that *the only structure* used by an electronic lighting ballast to convert AC to DC is a rectifier. *See* Part I *supra*. Thus, *Biomedino* is inapposite.

### III.    The Opinion does not state whether Defendant met its burden to establish indefiniteness by clear and convincing evidence.

Finally, it is not clear that the Court, prior to rendering the asserted claims invalid, properly considered the applicable "clear and convincing" standard for indefiniteness. *Schumer v. Lab. Comp. Sys., 308* F.3d 1304, 1315-16 (Fed. Cir. 2002) ("Evidence of invalidity must be

9

clear as well as convincing."). An indefiniteness analysis frequently involves fact-finding. *See Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1365-66 (Fed. Cir.- 2003). In such instances, the challenger must prove by clear and convincing evidence that those skilled in the art would not understand what is claimed. *Id*. ("[If there] are any factual findings upon which a trial court's indefiniteness conclusion depends, they must be proven by the challenger by clear and convincing evidence."); *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1372 (Fed. Cir. 2004) (to rule on indefiniteness, "a court must determine whether those skilled in the art would understand what is claimed"); *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369, 1376-77 (Fed. Cir. 2001) ("a challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art").

Defendant has not and cannot meet its burden to establish by clear and convincing evidence that those skilled in the art would not understand the claims. To the contrary, Plaintiff's uncontroverted testimony establishes that (1) the voltage source limitation connotes sufficient structure to those skilled in the art, and (2) to the extent necessary, the specification recites sufficient corresponding structure for the voltage source limitation. Accordingly, Plaintiff seeks clarification and an opportunity to be heard on this point.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court withdraw its Opinion and adopt Plaintiff's proposed construction for the voltage source limitation. Alternatively, Plaintiff requests a brief hearing, as soon as the Court's calendar permits, to address these issues.

| | |
|---|---|
| **Dated:  August 30, 2010.** | Respectfully submitted, |
| | /s/ Jonathan T. Suder |
| | State Bar No.  19463350 |
| | David A. Skeels |
| | State Bar No.  24041925 |
| | FRIEDMAN, SUDER & COOKE |
| | Tindall Square Warehouse No, 1 |
| | 604 East 4th Street, Suite 200 |
| | Fort Worth, Texas 76102 |
| | (817) 334-0400 |
| | (817) 334-0401 (fax) |
| | skeels@fselaw.com |
| | its@fsclaw.com |

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on or about the 24th day of August, 2010, I spoke with counsel for Defendant Universal Lighting Technologies, Inc., who indicated that he is opposed to the relief sought in this Motion.

/s/ David A. Skeels

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Wichita Falls Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ David A. Skeels

N:\Clients\MJ\Lighting Ballast\Claim Construction\Motion for Reconsideration and for hearing.doc