IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 7:09-CV-00029-O |
| v. | § § | **JURY TRIAL DEMANDED** |
| UNIVERSAL LIGHTING TECHNOLOGIES, INC., | § § § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION TO STRIKE EXPERT TESTIMONY OF DR. MICHAEL GIESSELMANN AND EXPERT TESTIMONY OF ULT'S SEVENTEEN "NON-RETAINED EXPERTS" AND MEMORANDUM IN SUPPORT**

Plaintiff Lighting Ballast Control LLC ("LBC") files this Motion to Strike Expert Testimony of Dr. Michael Giesselmann and Expert Testimony of ULT's seventeen "Non-Retained Experts." LBC respectfully shows the Court as follows:

**I.   Procedural Background**

On December 27, 2010, the Court issued its Final Scheduling Order. In that order, the Court established January 24, 2011 as the deadline for opening expert reports on issues for which a party bears the burden of proof. On January 24, 2011, LBC served on Universal Lighting Technologies, Inc. ("ULT") the expert reports of Dr. Victor Roberts (infringement), Mr. Mark Gallagher (damages), and Mr. Edward Goldstein (willful infringement). The same day, ULT served on LBC the expert report of Dr. Michael Giesselmann (invalidity).

Also, pursuant to Rule 26(a)(2), the parties were required to disclose all other experts, including non-retained experts, no later than 90 days before trial. On January 28, 2011, after the close of fact discovery and just three weeks before the close of expert discovery, ULT designated, for the first time, seventeen witnesses as non-retained infringement experts.

## II. Brief Summary of Arguments

### A. ULT's Invalidity Expert is Not Skilled in the Art

In order to be one skilled in the art, a witness must be "qualified as an expert by knowledge, skill, experience, training, or education" in the pertinent art or that witness cannot "assist the trier of fact to understand the evidence or to determine a fact at issue." *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008). Courts have used a six-factor test[1] to determine whether one qualifies as a person skilled in the art. *Daiichi Sankyo Co., Ltd. v. Apotex, Inc*., 501 F.3d 1254, 1256 (Fed. Cir. 2007). In this case, a person of skill in the art must have experience in the field of electronic lighting ballast design.[2] *See* A-149; A-183-85.[3] ULT has proposed a flawed and overly broad definition of one skilled in the art, but it has not specifically objected to LBC's proposed definition, which requires lighting ballast experience.

Dr. Giesselmann argues that the '529 patent is invalid under 28 U.S.C. §102 and §103. Dr. Giesselmann is a college professor with substantial experience and education in power electronics, but he lacks the requisite knowledge and experience in the specific field of electronic lighting ballasts and lighting ballast design. *See generally* A-128-140. Specifically, despite ULT's access to numerous engineers, including current and former employees with years of direct, hands-on experience in the field of electronic lighting ballasts and lighting ballast design, including one former employee who issued a rebuttal report on the issue of infringement, ULT designated as its invalidity expert a professor who lacks the requisite experience in lighting ballast design.

---

[1] The factors are discussed in further detail below.

[2] Such experience could include, for example, actual work as a designer, supervision of ballast designers, regular interaction with lighting ballast designers that requires an understanding of their work, or substantial research, academic study, or consulting work related to electronic lighting ballast design.

[3] Plaintiff's Appendix, including the declaration of David Skeels at A-314-15, is attached hereto and is incorporated by reference.

  **B.**  **ULT failed to comply with Fed. R. Civ. P. 26(a)(2)(C) when it designated its seventeen "non-retained experts"**

On January 31, 2011, just one week before rebuttal reports were due, ULT served disclosures under Rule 26(a)(2)(C) designating, for the first time, seventeen witnesses as non-retained expert witnesses on various subjects, including non-infringement. All are either past or present employees of ULT or its predecessor companies who have experience in the area of lighting ballasts. By designating these individuals as "experts" in this manner and at this late date in the pre-trial schedule, ULT is abusing the procedural rules and is attempting to avoid the production any type of detailed disclosures or expert reports. ULT has not indicated what these witnesses' opinions might be, or any of the facts to support those unidentified opinions. *See* A-230-38.

Rule 26(a)(2)(C) specifically requires a party to produce a listing of the subject matter on which each non-retained witness will testify, along with a summary of the facts and opinions related to this subject matter. Here, ULT has ignored the rule by identifying a list of "experts" without any description of their opinions or of the factual bases for such opinions. For example, ULT does not state whether they have engaged in product testing, comparisons of the claim limitations to ULT's products, or schematic analysis. ULT apparently seeks to bolster the non-infringement analysis of its retained expert, Robert Burke. It should be excluded from doing so.

**III.**  **Dr. Giesselmann's Expert Testimony Should Be Excluded**

  **A.**  **Legal Standard for One Skilled in the Art**

In *Daiichi Sankyo Co. Ltd v. Apotex Inc.*, the Federal Circuit relied on a six-factor test to determine whether one is skilled in the art: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active

3

workers in the field. *Daiichi Sankyo Co., Ltd. v. Apotex, Inc*., 501 F.3d 1254, 1256 (Fed. Cir. 2007), citing *Envtl. Designs, Ltd. v. Union Oil Co*., 713 F.2d 693, 696 (Fed. Cir. 1983). While many courts, including *Daiichi,* have used this test, courts have also noted that these factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art. *Id.* As explained below, Dr. Giesselmann is not qualified under the *Daiichi* test to serve as one skilled in the art.

###   B.   Legal Standard for Expert Testimony

Expert testimony is admissible under Federal Rule of Evidence 702 only if (1) it will assist the trier of fact to understand the evidence or to determine a fact in issue, (2) it is based on sufficient facts or data, (3) it is the product of reliable principles and methods, and (4) the witness has properly applied the principles and methods to the facts of the case. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-95 (1993); *U.S. v. Allard*, 464 F.3d 529. 532 (5th Cir. 2006). The Advisory Committee notes to Rule 702 explain that the purpose of the Rule is to acknowledge "the trial court's role as a gatekeeper and provide some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." Fed. R. Evid. 702, Advisory Committee Notes. These notes further clarify that the general standards in Rule 702 apply to "all types of expert testimony." *Id.*

When a party files a motion to exclude expert testimony, the proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met. *Id.*; *Seaman v. Seacor Marine L.L.C.,* 326 Fed. Appx. 721, 724 (5th Cir. 2009). District courts are given "wide latitude" to determine the admissibility of expert testimony, and their decision to exclude such testimony will be affirmed on appeal absent

an abuse of discretion. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 138-39 (1997); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

### C. Dr. Giesselmann is Not One Skilled In The Art of Electronic Lighting Ballast Design

Dr. Giesselmann fails to qualify as one skilled in the art of electronic lighting ballast design (1) under the *Daiichi* factors and (2) under the definition of Plaintiff's expert Dr. Victor Roberts, whom the Court previously recognized as an expert skilled in the relevant art.[4]

#### 1. Under the *Daiichi* factors, Dr. Giesselmann is not one skilled in the art

As noted above, the *Daiichi* test consists of six factors that serve as a guide to determining whether an expert is qualified as one skilled in the art. *Daiichi,* 501 F.3d. at 1256. The first factor focuses on the educational level of the inventor. Here, the inventor, Andrew Bobel, is an engineer with the equivalent of a bachelor's degree in electrical engineering and has over 20 years of lighting ballast experience. Plaintiff's Opening Brief on Claim Construction [Dkt. 84] at 1-2; *see also* A-241-85. Mr. Bobel not only has experience in the field but is also a named inventor on over 50 patents. *Id*. Dr. Giesselmann has advanced degrees in engineering, but he does not have any experience in electronic lighting ballast design, as discussed further in some of the factors below.[5]

The second factor focuses on the types of problems encountered in the art. *Daiichi,* 501 F.3d. at 1256. Plaintiff's validity expert, Dr. Regan Zane, described in his expert report how the problems of lighting ballasts are specific ones that are not likely to be appreciated by most engineers, even those with power electronics experience. *See* A-184-85. Specifically, Dr. Zane

---

[4] Amended Memorandum Opinion and Order [Dkt. 107] at 16, 21 n.5.
[5] The Federal Circuit has noted on several occasions that design experience is a factor to be considered along with educational level. *See e.g. Vandenberg v. Dairy Equip.,* 740 F.2d 1560, 1566 (Fed. Cir. 1984) (noting that in cases where technology is advanced, the level of skill in the art may be high and may require experts with experience in that field); *see also Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382 (Fed. Cir. 1983) (Affirming district court that defined skill in the art at a high level, including a definition that required design experience in the field).

5

stated that a definition which does not require experience in electronic lighting ballast design would be deficient "due to the many unique power circuit and control techniques applied only to electronic ballasts and the unique challenges presented by fluorescent lamp loads that are not present in most applications for power electronic circuits." *Id.* Again, Dr. Giesselmann's experience and education in power electronics is substantial, but his lack of specific experience in electronic lighting ballast design renders him unqualified under this factor.

The third factor considers prior art solutions to the problems. *Daiichi,* 501 F.3d. at 1256. In this instance, ULT had Dr. Giesselmann analyze what ULT has designated as prior art. *See generally* A-87 to A-127. But Dr. Giesselmann's report suggests that he was introduced to these prior art solutions in connection with this litigation and was not familiar with them beforehand. Under this factor, Dr. Giesselmann is not skilled in the art.

The fourth factor considers the rapidity with which innovations are made. *Daiichi,* 501 F.3d. at 1254. Once again, an individual with no experience in lighting ballast design cannot reasonably claim to be familiar with ongoing innovations in the art. In his report, Dr. Giesselmann discusses the alleged prior art, including several Japanese patent applications and one U.S. patent. But he does not address or document how the industry has evolved or developed, and he has not otherwise indicated whether or how he is familiar with technological innovations in the field of electronic lighting ballast design. Contrast this with the detailed discussion of the history and evolution of lighting ballast technology contained in Dr. Roberts' expert report. *See* A-151 to A-164. This factor supports the exclusion of Dr. Giesselmann.

The fifth factor is the sophistication of the technology. *Daiichi,* 501 F.3d at 1254. The parties appear to agree that this case involves sophisticated technology. But the parties disagree about the level of sophistication required to qualify as one skilled in the art. Giesselmann argues

that "a bachelor of science degree in electrical engineering…and three to five years of experience in the field of *lighting technology*" is sufficient. *See* A-107 (emphasis added). Plaintiff and its experts disagree (*See*, *e.g.*, A-149; A-183-85). As Dr. Zane points out, the field of "lighting technology" is far too broad, and the person of skill in the art must have specific experience in lighting ballast design[6]. This factor weighs against Dr. Giesselmann.

The sixth and final factor relates to the educational level of active workers in the field. *Daiichi,* 501 F.3d at 1254. This factor emphasizes the importance of having experience "in the field." As noted above, Giesselmann is not and has never been an "active worker in the field." ULT clearly recognizes the need to rely on engineers with significant experience in lighting ballast design. Specifically, ULT has now designated nineteen technical experts, and eighteen of them (all but Giesselmann) are engineers who appear to have experience in lighting ballast design. A-230-38. Dr. Giesselmann is the ***only*** infringement or validity expert designated by either side who does not have experience in lighting ballast design. The sixth factor weighs heavily against Dr. Giesselmann.

In summary, the patented technology in this case is sophisticated technology directed toward those with specific experience in the field of electronic lighting ballast design, as opposed to the more generic field of "lighting technology." Under *Daiichi*, Dr. Giesselmann is not "a person of ordinary skill in the art." As such, his testimony on invalidity should be excluded. *See Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).

---

[6] As Dr. Zane describes in his report, the broad field of "lighting technology" would "cover an enormous range of engineers and scientists that may have a background degree in electrical engineering but have no understanding of electronic ballast circuits." A-184-85. Examples of the types of engineers and scientists who would fit ULT's overly broad definition but might not have electronic lighting ballast design experience include "physicists that focus on gas discharge behavior, to semiconductor scientists that develop solid-state light emitting diodes (LEDs), to plastics, glass and thermal design experts that develop lenses and lighting fixtures, to architectural and lighting designers that specify building construction." A-184-85. As Dr. Zane points out, such engineers, without more, would not be able to understand the sophistication of the present technology.

### 2. Under Plaintiff's proposed definition, Dr. Giesselmann is not skilled in the art

Plaintiff's infringement expert, Dr. Victor Roberts, is unquestionably one skilled in the art, and, as noted by the Court's Claim Construction Order, Dr. Roberts' expert qualifications have not been challenged by ULT. *See* Amended Memorandum and Order [Dkt. 109] at 21 n.5. Dr. Roberts provides the following definition of one skilled in the art[7]:

> In this case, a person of ordinary skill in the art would have at least a BSEE degree, or equivalent, and *5 years of experience in electronic ballast design*, or 5 years experience in power electronics with *one year experience in ballast design*; or an MSEE or equivalent, and *two years experience in electronic ballast design*, or 2 years of experience in power electronics with *one year experience in electronic ballast design*. A person of ordinary skill in the art would also understand the basic electrical characteristics of fluorescent lamps, the practical application of electronic ballasts in the marketplace, key regulatory requirements that impact the use of electronic ballasts, and at least some knowledge of the products available from various vendors.

*See* A-149 (emphasis added). This definition is in accord with the *Daiichi* factors, as applied to the technology and patent at issue in this case.

Mr. Robert Burke, ULT's rebuttal infringement expert, quibbled with the second half of Dr. Roberts' definition. But he did not directly challenge or object to Plaintiff's position that one of skill in the art must have experience in electronic lighting ballast design. A-027-028. In fact, ULT has demonstrated the availability of witnesses who meet Dr. Roberts' definition by designating eighteen different individuals with experience in lighting ballast design, including its infringement expert Mr. Burke. But for reasons that are unclear, ULT chose someone who lacked the requisite experience in the relevant art to author its invalidity report.

---

[7] Under this definition of one skilled in the art, both Dr. Roberts and Dr. Zane qualify based on their education and experience. *See* A-149; A-183-85; *see also* A-289 – A313 (their respective CVs).

Dr. Giesselmann has no experience in lighting ballast design. His expert testimony would serve only to confuse the trier of fact and should therefore be excluded. *See* Fed. R. Evid. 702, 403.

## IV.     Expert Testimony from ULT's 17 Non-Retained "Experts" Should Be Excluded

On January 28, 2011, two weeks after the close of fact discovery, one week after the deadline for opening expert reports, and just three weeks before the close of expert discovery, ULT identified, for the first time, seventeen additional infringement experts.[8] ULT did not provide expert reports for any of them. ULT did not even provide a "summary of the facts and opinions [on] which the witness[es] [are] expected to testify," as required by Rule 26(a)(2)(C). The majority of these witnesses boast personal knowledge and experience with ULT's products, in addition to general experience in the lighting ballast field. By characterizing these seventeen individuals as "non-retained experts," ULT is doing an end-around Rule 26(a)(2) to avoid having to produce expert reports for any of these witnesses. This type of tactic has been criticized in the past. *Saudi v. S/T Marine Atl.*, 2000 U.S. Dist. LEXIS 20864 (S.D. Tex. Dec. 14, 2000) (in case applying prior version of Rule 26, court criticized party's last minute designation of an "excessive number of people as experts" and admonished the designating party for "attempt[ing] to gain an unfair advantage"); *see also Malibu Consulting Corp. v. Funair Corp.,* 2007 U.S. Dist. LEXIS 58149 at *4 (W.D. Tex. Aug. 9, 2007) (applying prior version of Rule 26 and stating: "the court … recognizes the potential for unfair surprise stemming from expert testimony that has not properly been disclosed.").

Regardless of the questionable nature of these litigation tactics, ULT had an obligation to, at a minimum, state (i) the subject matter of the anticipated expert testimony and (ii) a "summary

---

[8] Ironically, all seventeen identified witnesses are past or present employees of ULT or its predecessor companies and appear to have experience in lighting ballast design, further confirmation that ULT could have found an invalidity expert with experience in lighting ballast design but chose not to.

9

of the facts and opinions to which the witness is expected to testify," as required by Fed. R. Civ. P. 26(a)(2)(C). It has not done so. Instead, ULT has provided only the barest descriptions of the subject matter of the testimony. *See generally* A-230 to A-238. For example, the disclosure of witness Ali Fawaz states the following:

> Based on his education and experience as an engineer and his personal knowledge of ballast designs and product made and/or sold by ULT, Mr. Fawaz may testify regarding the design, engineering, and operation of ULT lighting ballast products, the differences between such products and the alleged invention of the patent-in-suit, and the determinations made by himself or others that such products do not infringe the patent-in-suit.

A-234. For each of the seventeen "experts," ULT uses substantially similar language. As stated, ULT has failed to provide the required opinions and has also failed to provide any facts supporting those opinions. By way of example only, ULT has not explained whether any of these witnesses (a) tested any of the accused products, (b) compared the claims of the '529 patent to the Accused Products, or (c) reviewed the schematics of the accused products. *Id.*

In light of ULT's failure to comply with Rule 26(a)(2)(C) and the tight scheduling order now in place, Plaintiff respectfully asks the Court exclude all "expert" testimony from these individuals. Such witnesses are not "essential" to ULT's case and ULT will not be prejudiced by such exclusion because it will still be able to offer expert testimony of non-infringement through its retained expert, Robert Burke.

## V. CONCLUSION

For the reasons above, Plaintiff respectfully submits that Dr. Giesselmann's expert testimony and report should be excluded. Plaintiff further prays for the exclusion of all expert testimony that ULT may try to elicit from the seventeen "experts" identified in its recent disclosures. Finally, Plaintiff prays for such further relief to which it may be entitled.

| | |
|---|---|
| **Dated:   March 4, 2011.** | Respectfully submitted,<br><br>/s/ David A. Skeels<br>State Bar No. 24041925<br>Jonathan T. Suder<br>State Bar No. 19463350<br>FRIEDMAN, SUDER & COOKE<br>Tindall Square Warehouse No. 1<br>604 East 4th Street, Suite 200<br>Fort Worth, Texas 76102<br>(817) 334-0400<br>(817) 334-0401 (fax)<br>jts@fsclaw.com<br>skeels@fsclaw.com |

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on the 4th day of March, 2011, I conferred with counsel for ULT regarding the merits of Plaintiff's Motion. Agreement could not be reached and this matter is therefore presented to the Court for determination.

/s/ David A. Skeels

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of March 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Wichita Falls Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ David A. Skeels