IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| LIGHTING BALLAST CONTROL LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 7:09-cv-00029-O ) |
| UNIVERSAL LIGHTING TECHNOLOGIES, INC., | ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT UNIVERSAL LIGHTING TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY**

Defendant Universal Lighting Technologies, Inc. ("ULT") hereby opposes the motion of Plaintiff Lighting Ballast Control LLC ("LBC") for leave to file a sur-reply [ECF #140].

**GOVERNING LEGAL STANDARD**

Sur-replies are "highly disfavored," because, as here, "they usually are a strategic effort by the nonmovant to have the last word on a matter [and] usually are not that helpful in resolving pending matters." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). Accordingly, this Court permits sur-replies only "in exceptional or extraordinary circumstances." *Id.* LBC fails to identify any genuine "exceptional or extraordinary circumstances" justifying a departure from the rule against sur-replies, nor does it even acknowledge its burden to meet this high standard. Rather, LBC attempts "to have the last word" on points it could have addressed—and in some instances, *did address*— in opposing ULT's Motion for Summary Judgment ("MSJ") [ECF #127]. LBC also seeks to dump new materials into the record, including a remarkable new "errata" sheet that attempts to change the substance of the sworn deposition testimony of one of its expert witnesses—in some instances from "No" to "Yes"—on issues that may be germane to

the MSJ. The Court should not permit LBC to add to or alter the summary judgment record in a sur-reply.

## ARGUMENT

I. **LBC HAS FAILED TO IDENTIFY ANY ARGUMENTS RAISED FOR THE FIRST TIME IN ULT'S REPLY BRIEF**

The first page and a half of LBC's proffered sur-reply simply rehashes an argument that LBC made in its opposition to the MSJ, arguing that its infringement expert, Dr. Roberts, performed an appropriate "'equivalent structure' analysis," a point that ULT disputed in both its opening MSJ papers and its reply brief. ECF #140-1 at 1-2. It then sets forth in bullet points the two "new arguments" that it claims ULT raised for the first time in its reply brief. ECF #140-1 at 2. But both of the "new arguments" identified by LBC were raised in ULT's opening brief in support of its MSJ, as a simple review of ULT's opening brief makes clear:

First, LBC is flat wrong in arguing that "ULT seeks to add a new limitation to Claim 1" by arguing that the invention of that claim will "avoid restrike attempts if lamps are missing or defective." ECF 140-1 (quoting ULT's reply brief at 6). The relevance of "restrike attempts" to the infringement analysis of Claim 1 was specifically addressed in ULT's opening MSJ brief. For example, we pointed out there that Dr. Roberts had acknowledged in his expert report that the claimed invention prevents restrike attempts when a lamp is removed or defective, but he later conceded in his deposition that the accused ULT products operate in a different way to reach a different result:

> Another "result" of the claimed "control means" cited by Dr. Roberts is that it will "restart the ballast only after the lamps have been removed and replaced." A200. The accused products also do not meet this result. All of the lamps will initiate oscillations, or attempt to initiate oscillations by attempting "restrikes" of the lamp, even when one or more lamps or filaments are removed or broken. A263-A287. Dr. Roberts acknowledged that this is a different operation than in the '529 patent: [followed by a block quote from Dr. Roberts' deposition].

2

ECF 127 at 27-28; *accord id* at 10. Indeed, the relevance of restrike attempts has been addressed throughout this litigation. In its claim construction briefs, LBC itself emphasized that the invention of Claim 1 "prevent[s] the ballast from trying to re-strike the lamp" until after a removed or defective lamp is replaced. ECF 84 at 4; *accord, id.* at 19 (describing invention as "preventing the ballast from trying to restart before the defective lamp has been replaced"). This is part and parcel with the specification's description that the claimed invention will not draw power when a lamp is removed or inoperative. Col. 2, ll. 5-7; col. 2, ll. 41-44; col. 11, ll. 20-23. But once LBC learned from Mr. Burke's expert report that the accused ULT products do not achieve this result, it disclaimed this aspect of the invention. There is nothing new, however, about ULT's position that its products operate in a different way to achieve a different result than the invention of Claim 1 of the '529 patent because they attempt to restrike a lamp even when it is removed or defective; that point plainly was argued in ULT's MSJ.

Second, LBC's proffered sur-reply asserts that "ULT has taken a new position on 'interchangeability'." ECF #140-1 at 2. But ULT's opening MSJ brief addressed interchangeability in detail, explaining (1) why the accused products are not interchangeable with the corresponding structure to the claimed control means, and (2) why this case is thus similar to another in which the Federal Circuit affirmed summary judgment of non-infringement. ECF #127 at 25 (beginning with the sentence "Here, the structures in the accused products and the claimed 'control means' are not even interchangeable" and continuing through the rest of the paragraph and the following paragraph).

Because LBC's sur-reply seeks "to respond to arguments raised in [ULT]'s original Motion . . . , which [LBC] could have addressed in [its] initial Response," LBC's motion for leave to file a sur-reply should be denied. *E.g., Milkie v. Extreme Networks, Inc.*, No. 3:03-CV-1355-P, 2004 WL 690844 at *2 (N.D. Tex. Mar. 30, 2004), *vacated on other grounds*, 180 Fed.

Appx. 541 (5th Cir. 2006). The decision in *Murray v. TXU Corp.*, No. 3:03-CV-0888-P, 2005 WL 1313412 (N.D. Tex. May 27, 2005) is particularly instructive, as it addresses and rejects many of the same arguments LBC raises in its motion for leave. LBC attempts to justify its sur-reply by citing the alleged "straw man technique" of ULT (*see* LBC's Sur-Reply at 1); the exact same argument was rejected in *Murray*. *Id.* at 4 & n.8. And, as in *Murray*, all of the arguments ULT made in its reply either rebutted LBC's opposition or bolstered arguments previously advanced by ULT in its initial MSJ brief. *Id.* at 4. It is "neither novel, nor surprising" that ULT would seek to undermine LBC's arguments in opposition or bolster its own arguments in support, and neither tactic merits a sur-reply. *Id.*[1] LBC's motion relies on inapposite cases, where the movant raised wholly new *legal theories* in its sur-reply.[2] In contrast to those cases, LBC "simply wants an opportunity to continue the argument." *Id.*

## II.   THE EVIDENCE RELIED ON BY ULT IN ITS REPLY BRIEF DOES NOT WARRANT THE SUR-REPLY PROFFERED BY LBC

ULT already explained why it properly submitted what LBC calls "new evidence," namely Prof. Giesselmann's declaration and additional portions of Mr. Poehlman's deposition transcript, and need not repeat these arguments. UTL's Obj. to LBC's Evid. [ECF #137] at 3; Resp. to LBC's Obj. to Evid. [ECF #139] at 1-2. In this district, parties routinely submit such

---

[1] This Court has routinely denied leave to file sur-replies that re-argue points. *See, e.g.*, *Brackens v. Dallas Indep. School Dist.*, No. 3:09-CV-0642-D, 2010 WL 5464823 at *5 (N.D. Tex. Sept. 20, 2010) (granting motion to strike sur-reply); *Info-Power Int'l, Inc. v. Coldwater Tech., Inc.*, No. 3:07-CV-0937-P, 2008 WL 5552245 at *8 (N.D. Tex. Dec. 31, 2008) (denying motion for leave to file sur-reply); *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 154 (N.D. Tex. 2007) (same).

[2] *See Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008) (cited in LBC's Mot. at 2.) (appellant sought to use its appellate reply brief as a "back door" to circumvent the fact that it was raising for the first time on appeal an entirely new ground for summary judgment); *Perez Librado v. M.S. Carriers, Inc.*, No. 3:02-CV-2095-D, 2004 U.S. Dist. LEXIS 12203 at *26, 31 (N.D. Tex. July 30, 2004) (cited in LBC's Mot. at 2) (Defendants first included *Daubert* analysis in their reply brief). In addition, LBC's reliance on *Williams v. Cintas Corp.*, 3:05-CV-668-P, 2005 U.S. Dist. LEXIS 14554 (N.D. Tex. July 15, 2005) is wholly misplaced. *See* LBC's Mot. at 2. In *Williams*, the court considered the plaintiff's sur-reply only because she was *pro se*. *Id.* at *7.

evidence in support of summary judgment motions with their reply briefs. *See Lacher*, 147 F. Supp. 2d at 539-40; *Murray*, 2005 WL 1313412 at *4; *Covington v. Roy's Nutrition Ctrs., Inc.*, No. 3:03-cv-1493, 2004 WL 576051 (N.D. Tx. March 22, 2004) at *3. This is "not necessarily a violation of the local rules" and in any event is not an "exceptional circumstance" justifying a sur-reply. *Lasher*, 147 F. Supp. 2d at 540.

### III. LBC SHOULD NOT BE PERMITTED TO USE A SUR-REPLY TO PRESENT NEW EVIDENCE THAT ATTEMPTS TO CONTRADICT THE CONCESSIONS OF ITS OWN EXPERT IN AN EFFORT TO AVOID SUMMARY JUDGMENT

While crying foul about "new evidence," LBC seeks to insert into the summary judgment record additional record material with its sur-reply, most notably the "errata sheet" of Dr. Roberts' deposition that ULT first saw when it received it as an exhibit to LBC's proffered sur-reply. This "errata" sheet literally changes answers from "No" to "Yes" in a number of instances (*see* Ex. A2 to LBC's Sur-Reply at A871, A875), and it attempts to revamp completely the substance of Dr. Roberts' answers on a number of other critical points highlighted in ULT's Motion for Summary Judgment and Reply.

For example, Dr. Roberts testified as follows at his deposition:

Q: [D]efect or defective is a term used in the '529 patent, correct?

A: Yes.

Q: How do you understand that?

A: A broken filament.

ULT Appendix at A596-597 (quoted in ULT's MSJ Br. at 31). Here is how LBC has now attempted to change Dr. Roberts' answer to the question via his "errata" sheet:

| Page | Line | Change from: | Change to: | Reason: |
|---|---|---|---|---|
| 72 | 10 | A broken filament. | In the context of Claim 1 of the '529 patent, "defective" means a broken filament that is in the path of the DC control signal, as described more fully at 372:14 - 376:11 of my transcript. | Clarity and completeness. |

Ex. A2 to LBC's Sur-Reply at A872. This "correction" completely changes the answer given under oath at the deposition and purports to incorporate *later-given* deposition testimony—elicited through leading questions by LBC's counsel, objected to by ULT's counsel. Thus, the incorporated objectionable testimony did not even exist at the time of the original question and answer; the changed answer in the errata sheet was not, and could not have been, given by Dr. Roberts at his deposition.

In other instances, LBC goes even farther in attempting to rewrite Dr. Roberts' testimony. In response to a question about whether a lamp with a broken filament is defective, the errata sheet literally reverses the sworn testimony given at the deposition 180 degrees:

| Page | Line | Change from: | Change to: | Reason: |
|---|---|---|---|---|
| 347 | 21 | Yes, it is. | No, a filament is not defective, as used in Claim 1, if the DC control signal cannot flow through that filament. | Same as for page 275, line 1. |

Ex. A2 to LBC's Sur-Reply at A872. These are just two of the many instances where Dr. Roberts' sworn testimony has been changed under the guise of "I misspoke" or "clarity and consistency." *Id.* at A872-875. At best, such changes represent argument by counsel on how Dr. Roberts' testimony should be understood in context; in reality, they reflect an attempt to conform the testimony of LBC's own expert to LBC's ever-changing infringement arguments.

"A deposition is not a take home exam." *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992). Courts have rejected attempts to change sworn deposition testimony via

later declarations or "errata" sheets in attempts to stave off summary judgment. *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1281-82 (10th Cir. 2003) (affirming district court's disregard of deposition corrections when deciding summary judgment motion); *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268-70 (3d Cir. 2010) (holding that, "when reviewing a motion for summary judgment, a district court does not abuse its discretion under Rule 30(e) when it refuses to consider proposed substantive changes that materially contradict prior deposition testimony"); *Rios v. Welch*, 856 F. Supp. 1499, 1502 (D. Kan. 1994) ("a plaintiff is not permitted to virtually rewrite portions of a deposition, particularly after the defendant has filed a summary judgment motion, simply by invoking the benefits of Rule 30(e)"); *Wigg v. Sioux Falls School District*, 274 F. Supp. 2d 1084, 1091 (D.S.D.2003) ("If a party were allowed to create material factual disputes by altering one's deposition testimony via an errata sheet, summary judgment would rarely, if ever, be granted"), *rev'd in part on other grounds*, 382 F.3d 807 (8th Cir. 2004).[3]

Dr. Roberts' new answers are not grounds for either permitting LBC's sur-reply or denying ULT's summary judgment motion. If the Court were to grant LBC's motion for leave, it should either exclude or strike Dr. Roberts' errata sheet entirely.

## CONCLUSION

ULT respectfully requests that the Court deny LBC's Motion for Leave to File a Sur-Reply in Support of Its Opposition to ULT's Motion for Summary Judgment.

---

[3] *See also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224-25 (9th Cir. 2005) ("Rule 30(e) is to be used for corrective, and not contradictory, changes"); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription . . . ."). Outside the summary judgment context, where courts allow substantive changes in deposition testimony by way of an errata sheet, they permit cross-examination at trial of the witness based on the change in testimony. *Global Mach. Tech. v. Thomas C. Wilson, Inc.*, No. H-02-0452, 2003 WL 25676467 at *5 (S.D. Tex. Sept. 18, 2003) (permitting use the deponent's original answers for impeachment purposes).

7

Dated:  March 25, 2011						Respectfully submitted,

							s/ Deborah L. Sterling
							Deborah L. Sterling (Texas Bar No. 19170950)
							Brenda T. Cubbage (Texas Bar No. 052013000)
							**SPENCER CRAIN CUBBAGE**
							**HEALY & MCNAMARA, PLLC**
							1201 Elm Street, Suite 4100
							Dallas, Texas 75270
							Telephone: (214) 290-0000
							Facsimile: (214) 290-0099

							Steven J. Routh
							Sten A. Jensen
							Diana M. Szego
							T. Vann Pearce, Jr.
							**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
							1152 15th Street, NW
							Washington, DC 20005-1706
							Telephone: (202) 339-8400

							John R. Inge
							**ORRICK, HERRINGTON & SUTCLIFFE LLP**
							Izumi Garden Tower, 28th Floor
							6-1 Roppongi 1-chome
							Minato-ku, Tokyo 106-6028, Japan
							Telephone: +81-3-3224-2900

							*Attorneys for Defendant Universal Lighting Technologies, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 25, 2011, a copy of the foregoing instrument has been served on all counsel listed below via electronic mail.

							/s/ Deborah L. Sterling

**Jonathan T. Suder** (jts@fsclaw.com)
**David A. Skeels** (skeels@fsclaw.com)
**Friedman, Suder & Cooke**
Tindall Square Warehouse No.1
604 E. 4th Street, Suite 2002
Fort Worth, TX  76102

*Counsel for Plaintiff Lighting Ballast Control LLC*