IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 7:09-CV-00029-O |
| v. | § § | **JURY TRIAL DEMANDED** |
| UNIVERSAL LIGHTING TECHNOLOGIES, INC., | § § § | |
| Defendant. | § | |

**PROPOSED PRELIMINARY JURY INSTRUCTIONS**[1]

Members of the Jury, you have previously been sworn as the jury to try this case. As the jury, you will decide the disputed questions of fact. As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

**What a Patent Is and How One is Obtained**

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how it is obtained.

**The Patent Process**

Article One of the United States Constitution grants Congress the powers to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and

---

[1] These proposed Preliminary Jury Instructions are substantially adapted from Judge Everingham's Preliminary Jury Instructions given to the jury on May 11, 2010 in the trial of *Commil USA, LLC v. Cisco Systems, Inc.*, Cause No. 2:07-CV-341-DF-CE in the United States District Court for the Eastern District of Texas, Marshall Division. Judge Everingham's instructions were based on the Model Patent Jury Instructions prepared by the National Jury Instruction Project and have been modified slightly to conform more closely to those model instructions.

inventors the exclusive right to their respective writings and discoveries." With this power, Congress enacted the patent laws.

Patents are granted by the United States Patent and Trademark Office. Sometimes that office is called the PTO. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States.

A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must file an application with the PTO. The PTO is an agency of the federal government. It employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it so others skilled in the field will know how to make and use it.

The specification concludes with one or more numbered sentences. These are the patent claims. If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files a patent application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the Patent Examiner reviews records available to the PTO for what is referred to as "prior art." The Examiner also will review prior art submitted to the PTO by the applicant.

In general, prior art includes things that existed before the claimed invention that were

publicly known or used in a publicly accessible way in this country or that were patented or described in a publication in any country. The Examiner considers, among things, whether each claim defines an invention that is new, useful, and not obvious when compared to the prior art. A patent lists the prior art that the Examiner considered. This list is called the "cited references."

After the prior art search and examination of the application, the Patent Examiner then informs the applicant in writing regarding what the Examiner has found and whether any claim is patentable and thus will be "allowed." This writing from the Patent Examiner is called an "office action."

If the Examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the Examiner and the patent applicant, may go back and forth for some time until the Examiner is satisfied that the application and claims meet the requirements for a patent. The papers that are generated during this time of communicating back and forth between the Patent Examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the PTO grants the patent.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A person or company accused of infringing a patent has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It will be your job to consider the evidence presented by the parties and determine independently whether or not the Defendant has proven that the patent is invalid.

**The Patent Involved in this Case**

Let's take a moment to look at the patent at issue in this case. You've been provided with notebooks. There should be a tab that indicates the '529 Patent, and then behind it, you should have a copy of the patent.

**The '529 Patent**

Page 1 of the patent, which follows the cover page showing the ribbon, provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, and the list of the cited references considered by the PTO.

If you look up at the very top on the right-hand side, it says patent number and then U.S. 5,436,529. And below that, the date of the patent is July 25, 1995. On the left-hand column toward the middle of the page, there's a heading indented there that says references cited. And then below that, it lists the references that were cited in the prosecution of the '529 patent.

The specification of the patent begins with an abstract, which is also found on the second page. In your copy, it will be over on the right-hand column as a heading that says abstract. The abstract is a brief statement about the subject matter of the invention. Next come the drawings. If you'll flip over to the next several pages, you'll see the drawings, and they illustrate various aspects or features of the invention. After the drawings, there is what is called the written description of the invention. The written description is organized in two columns on each page. You can see the column numbers are up at the top.

The specification includes numbered paragraphs referred to as the claims. If you'll flip over to the second to last page, at Column 11, you'll see on the left-hand side about two-thirds of the way down, under Column 11, there's a sentence that says "I claim: ". Then there's a list of

numbered paragraphs. These are the patent claims. The patent claims determine the scope or boundaries of the invention. Claims must be read in the context of the specification of which it is a part.

Three claims are at issue in this trial, claims 1, 2, and 5. Claim 1 is a type of claim called an "independent" claim, while claims 2 and 5 are "dependent" claims that refer to claim 1. This means that claim 1 includes all of the requirements that must be found in an accused product in order for that product to be covered by that claim, while claims 2 and 5 include everything that is in claim 1 plus the additional requirements listed. **ULT: As a result, if claim 1 is not infringed, because one or more of the requirements of the claim are not met, then claim 2 and claim 5 also are not infringed.**

**The Positions of the Parties**

To help you follow the evidence, I will give you a summary of the positions of the parties. The Plaintiff in this case is Lighting Ballast Control, LLC or "LBC." The Defendant in this case is Universal Lighting Technologies, Inc, or "ULT." The patent involved in this case is United States Patent Number 5,436,529. For convenience, the parties and I will often refer to the patent by the last three digits of the patent number. In other words, this case involves the '529 Patent.

In this case, the '529 Patent was obtained by Mr. Andrew Bobel. Mr. Bobel still owns the '529 Patent, but he transferred the rights to enforce the patent to a company called Acacia Patent Acquisition Company, which then transferred those enforcement rights to the Plaintiff, LBC, which is a subsidiary of Acacia Patent Acquisition Company.

The Plaintiff, LBC, contends that the Defendant, ULT, has infringed the claims 1, 2, and 5 of the '529 Patent by manufacturing, and selling electronic lighting ballasts that include all of

5

the requirements of those claims. Plaintiff contends it is entitled to damages to compensate for Defendant's alleged infringement, in the form of a reasonable royalty. Plaintiff also contends that ULT has willfully infringed the '529 Patent.

ULT denies Plaintiff's claims. ULT contends that its products do not infringe claims 1, 2, and 5 of the '529 Patent. ULT also contends claims 1, 2, and 5 are invalid. As a result, ULT contends that Plaintiff is not entitled to any damages. ULT also contends that it has not willfully infringed the '529 patent.

To fulfill your duties as jurors, you must decide whether claims 1, 2, or 5 of the '529 Patent have been infringed and whether those claims are invalid. If you decide that any claim of the '529 Patent has been infringed and is valid, you will then need to decide any money damages to be awarded to LBC to compensate for the infringement. You will also need to decide whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later in the proceedings.

**Claim Construction**

It is my job as Judge to determine the meaning of any claim language that needs interpretation. The process I went through to make these determinations is called "claim construction." You must accept the claim constructions that I give you, and you must use them when you decide whether the patent has been infringed and whether any claim is invalid. You have been provided with a copy of the claim constructions I have adopted for certain claims terms. That list of claim constructions is found in the second tab of the notebook. The terms and phrases I have defined are:

"oscillating resonant converter producing oscillations";

"DC input terminals producing a control signal";

"voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals"; and

"whenever at least one gas discharge lamp is removed from the output terminals or is defective";

I have also made certain decisions about how the following claim requirements should be understood:

"control means capable of receiving control signals from the DC input terminals and from the resonant converter, and operable to effectively initiate the oscillations, and to effectively stop the oscillations of the converter; and

"direct current blocking means coupled to the output terminals and operable to stop flow of the control signal from the DC input terminals".

**Glossary of Patent and Technical Terms**

To assist you in your deliberations, I have included in the third tab of your notebook a Glossary of Patent and Technical Terms that identifies terms used in patent matters and gives you a definition of those terms.

**Application**—The initial papers filed by the applicant with the PTO.

**Claims**—The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope or boundaries of the patent holder's exclusive rights during the life of the patent. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes each of the requirements of the earlier claim as well as additional requirements set out in the dependent claim.

**License**—Permission to use or make the patented invention, or to perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder in exchange for a fee called a "royalty" or in exchange for other types of payment.

7

>**Office action**—Communication from the patent examiner regarding the patent application.
>
>**Patent examiners**—Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application should be granted.
>
>**Preferred Embodiment** – An example of the invention described in the specification.
>
>**Prior art**—Prior art is not "art" as one might generally understand that word. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication. I will give you a more specific definition of prior art later.
>
>**Prosecution history**—The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. This record is sometimes referred to as the "file wrapper."
>
>**Specification**—The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings. In the specification, the inventor is required to provide a description saying: what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.
>
>**Ordinary skill in the art**—The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.

**Outline of the Trial**

I'm going to give you an outline of the trial. Soon, the lawyers for the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the parties will present their evidence, and after all the evidence is presented, the lawyers will again address you to make final arguments.

After final arguments, I will instruct you on the applicable law, and you will then retire to the jury room to deliberate on a verdict.

**Juror Conduct**

I need to say a few words now about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Second, do not read any news stories or articles or listen to any radio or television reports about this case or about anyone who has anything to do with it.

Third, do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials, and do not make any investigation about the case on your own. Let me emphasize this point: it may be natural for you to be curious about the case and want to find out more on your own. But it is absolutely critical that you do not look for information about the parties or the case using the internet or do any other form of outside research, whether at home or on a handheld device or in any other manner. You must reach your decision based on only the evidence presented at the trial.

Fourth, if you need to communicate with me, simply give a signed note to the courtroom deputy or my briefing attorney, and she will give it to me.

Fifth, do not make up your mind about what the verdict should be until after you've gone to the jury room at the end of the trial to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then. **ULT: The plaintiff will present its case first; then it is the defendant's turn to present its case. You should not make a decision until both sides have been heard and all of the evidence has been submitted.**

During the trial, it may be necessary for me to confer with the lawyers out of your

hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

**Evidence**

Let's talk about what is evidence. The evidence that you are to consider in deciding what the facts are consists of:

(1)   the sworn testimony of any witness;
(2)   the exhibits which are received into evidence; and,
(3)   any facts to which the lawyers agree, or "stipulate."

Now, let's talk about what is not evidence. The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

(1)   statements and arguments of the attorneys;
(2)   questions and objections of the attorneys;
(3)   testimony that I instruct you to disregard; and
(4)   anything you may see or hear when the Court is not in session, even if what you see or hear is done or said by one of the parties or one of the witnesses.

Now, let us talk about direct and circumstantial evidence next. Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.

Let me give you an example of direct and circumstantial evidence.  If a witness testified that he/she observed snow falling last night, that would be an example of direct evidence.  On the other hand, if a witness testified that there was no snow on the ground before going to sleep and that, when he/she arose in the morning, the ground was snow-covered, you could *infer* from these facts that it snowed during the night.  That would be an example of circumstantial evidence.  That's why the law makes no distinction between direct and circumstantial evidence

but simply requires the jury to consider all of the evidence in the case, regardless of whether it's direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Weight of the Evidence**

In deciding the facts of the case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see, hear, or know the things testified to;
(2) the witness' memory;
(3) the witness' manner while testifying;
(4) the witness' interest in the outcome of the case and any bias or prejudice;
(5) whether other evidence contradicted the witness' testimony;
(6) the reasonableness of the witness' testimony in light of all of the evidence; and
(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense leave you to make from the testimony in evidence. The testimony of a single witness or the information from a single document may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all of the other evidence, you believe that single witness or exhibit.

**Burden of Proof**

When a party has the burden of proof on any claim or defense by a "preponderance of the evidence," it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true, or "more probable than not." When a party has the burden of proving any claim or defense by "clear and convincing" evidence, that party must meet a higher standard than the "more probable than not" standard. Clear and convincing evidence means the party must persuade you that the claim or defense is highly probable. Nevertheless, the clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is "beyond a reasonable doubt."

You should base your decision on all of the evidence, regardless of which party presented it.

**Expert Witnesses**

Let's talk about expert witnesses. When knowledge of a specialized or technical subject matter may be helpful to the jury, a person who has special training or experience in that field, called an expert witness, is permitted to state his or her opinion on such matters.

However, you're not required to accept that opinion. As with any other witness, it's up to you to decide whether to rely on it.

**Testimony By Deposition or Other Proceeding**

During the trial of this case, certain testimony may be presented to you by way of deposition or other proceeding. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand is usually presented under oath, either in writing or by way of video, in the form of a deposition. Such testimony is entitled to the same consideration, and insofar as possible, is to be judged as to credibility, weighed, and otherwise considered by

the jury in the same way as if the witness had been present and had given from the witness stand the testimony read or shown to you from the deposition.

**Objections**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if he or she had been permitted to answer the question.

**Judge's Commentary on Evidence**

It is possible that during the course of the trial I may make comments regarding the evidence in the case. If I make any such comments, it is not for the purpose of telling you how you should see the evidence, and you may disregard them entirely since you, the jurors, are the sole judges of the facts. You should consider yourselves to be the Supreme Court of the facts in this case.