IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.  7:09-CV-00029-O |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| UNIVERSAL   LIGHTING   TECHNOLOGIES, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

<u>**AGREED CHARGE**</u>

LADIES AND GENTLEMEN OF THE JURY:

You have heard the evidence presented by the parties and the arguments of their respective attorneys.  It is now my duty to give you the charge in this case.  It will be an oral charge and is given in an effort to assist you in your deliberation in deciding the issues  you must decide to reach a fair and impartial verdict in this case.  Perhaps this function of the Court is the most important one that the Court performs in the trial, so I ask you to pay close attention to my remarks.

You will remember that, at the beginning of this trial, I gave you some general instructions and definitions.  Rather than repeat them, I ask you to recall them now in deciding the facts and issues that you are to decide.  As I instructed you at the beginning of trial, you are the exclusive judges of the facts, the credibility of the evidence, and the weight to be given the testimony of the witnesses.

You are to perform your duty without bias or prejudice to any party.  The law does not permit jurors to be governed by sympathy or prejudice.  Corporations and all other persons are equal before the law and must be treated as equals in a court of justice. The Court and the parties expect that you will carefully and impartially consider all of the evidence, follow the law as I will

1

give it to you, and reach a just verdict.  You are instructed that all persons, including the Plaintiff and the Defendant in this case, stand equal before the law, and are to be dealt with as equals in this Court.

I will now briefly review the contentions of the parties and give you some additional instructions and definitions that will guide you in deciding the issues or facts that you must resolve in this case.

### PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES

The patent claims in issue are Claims 1, 2 and 5 of U.S. Patent 5,436,529, which has been referred to as "the '529 Patent."  As a group, I will refer to these claims of the '529 Patent as "the asserted claims."

The Plaintiff, LBC, contends that the Defendant, ULT, has infringed claims 1, 2, and 5 of the '529 Patent by manufacturing and selling electronic lighting ballasts that include all of the requirements of those claims.  Plaintiff contends it is entitled to damages to compensate for Defendant's alleged infringement, in the form of a reasonable royalty.  Plaintiff also contends that ULT has willfully infringed the asserted claims.

ULT denies Plaintiff's claims and has asserted its own counterclaims on non-infringement and invalidity of the '529 patent.  ULT contends that its electronic lighting ballasts do not infringe the asserted claims of the '529 Patent.  ULT also contends the asserted claims are invalid.  As a result, ULT contends that Plaintiff is not entitled to any damages.  ULT also denies that it has willfully infringed any of the asserted claims.

Your job is to decide whether Defendant has infringed any of the asserted claims and whether each of the asserted claims are valid.  If you decide that any claim of the '529 patent has been infringed and is valid, you will then need to decide any money damages to be awarded to

Plaintiff to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take any finding of willful infringement into account later.

## BURDENS OF PROOF

The Plaintiff bears the burden of proof by a preponderance of the evidence that the Defendant infringed the asserted claims of the '529 Patent.  In other words, LBC must show that ULT's infringement is more probable than not.

The Plaintiff also has the burden of proof by a preponderance of the evidence for the amount of damages caused by Defendant's infringement.  To establish willful infringement, Plaintiff bears the burden of proof by clear and convincing evidence that the Defendant's infringement was willful.

The Defendant bears the burden of proof by clear and convincing evidence that the asserted claims of the '529 patent are invalid.

To review, "preponderance of the evidence" means that you must be persuaded by the evidence that the claim is more probably true than not true.  Clear and convincing evidence is a higher standard than proof by preponderance of the evidence.  Clear and convincing evidence means the party must persuade you that it is highly probable that the facts are as the party contends.  Nevertheless, the clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is "beyond a reasonable" doubt.

I will now give you instructions and definitions to help you in answering the questions to follow.

## CLAIM INTERPRETATION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because the words of the claims, as interpreted by the Court, are what define the boundaries of the invention. The figures and text in the rest of the patent provide a description and at least one example of the invention (sometimes referred to as a "preferred embodiment"), and they provide a context for the claims. Claim terms are to be read and understood in the context of the particular claims in which they appear and in the context of the entire patent, including the specification. But it is the claims themselves, as interpreted by the Court, that define how broad or narrow the patent's coverage is. **LBC: You must not compare the accused products to the preferred embodiment described in the '529 Patent, because it is the claims that are the proper vehicle to determine infringement, not the preferred emobidment.**[1]

Therefore, what a patent covers depends, in turn, on what each of its claims cover.

## HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain further how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by the claim.

---

[1] Support for LBC's position: *Johnson & Johnston Assocs. v. R.E. Serv. Co.,* 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("[T]he claims, not the specification, provide the measure of the patentee's right to exclude. . . . [T]he law of infringement compares the accused product with the claims as construed by the court. Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product with a preferred embodiment described in the specification. . . . ") (internal quotations omitted).

ULT objects to this sentence because it is unnecessary, confusing, and misleading, particularly in connection with means-plus-function terms, which are defined in part by the corresponding structure in the patent's specification. 35 U.S.C. § 112 ¶ 6. Instructing the jury that it cannot compare the accused products with a preferred embodiment described in the patent would be inconsistent with the Court's instructions that the corresponding structure for the "control means" and "direct current blocking means" are found in the "Description of the Preferred Embodiments" section of the '529 patent. The fact that the sentence may have applicability in certain contexts, such as the claim construction issues in *Johnson & Johnston Assocs,*, does not make it a proper instruction to give the jury with respect to a claim interpretation that the Court already has decided.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and the product is said to "fall within the scope" of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements those words impose.

You must apply the meaning I give the patent claims to both your decision on infringement and your decision on validity. I will now provide to you my definitions of certain claim terms and will instruct you on how those terms are to be understood when deciding the issues of infringement and validity in this case. You must accept my definitions of these words in the claims as being correct.

You have been provided with a copy of the '529 Patent and a copy of the claim term definitions, and you may use them in your deliberations. The asserted claims are as follows:

Claim 1.

[Preamble] An energy conversion device employing an oscillating resonant converter producing oscillations, having DC input terminals producing a control signal and adapted to power at least one gas discharge lamp having heatable filaments, the device comprising:

[A] voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals;

[B] output terminals connected to the filaments of the gas discharge lamp;

[C] control means capable of receiving control signals from the DC input terminals and from the resonant converter, and operable to effectively initiate the oscillations, and to effectively stop the oscillations of the converter; and

[D] direct current blocking means coupled to the output terminals and operable to stop the flow of the control signal from the DC input terminals, whenever at least one gas discharge lamp is removed from the output terminals or is defective.

Claim 2.      The device according to claim 1 wherein the resonant converter comprises a capacitor and an inductor connected in series via an intermediate node.

Claim 5.      The device according to claim 1 wherein the direct current blocking means includes a capacitor and is connected effectively across at least one heatable filament of at least one gas discharge lamp.

## "COMPRISING" CLAIMS

I will now explain how to consider a situation where an asserted claim uses the term "comprising." In this instance, Claim 1 of the '529 patent uses the word "comprising." When a claim uses the word comprising, it means including or containing.  A claim that uses the word comprising or comprises is not limited to products having only the elements that are recited in the claim but also covers products that add additional elements.

This is relevant in this case because the preamble to Claim 1 uses the phrase "An energy conversion device employing an oscillating resonant converter producing oscillations, having DC input terminals producing a control signal and adapted to power at least one gas discharge lamp having heatable filaments, the device comprising:."

If you find that Defendant's products include all of the elements of Claim 1, the fact that Defendant's products might include additional components would not avoid infringement of a claim that uses "comprising" language.

## "CLAIM CONSTRUCTION"

I have construed or interpreted certain of the terms of the asserted claims to have the following meanings, which you should accept and apply in deciding this case:

As used in the Preamble of Claim 1, the phrase "oscillating resonant converter producing oscillations" is defined as "a circuit, or portion of a circuit, containing inductance, capacitance, and at least one electronic switching device (such as a transistor) that operates to convert direct current into alternating current."

As used in the Preamble of Claim 1, the phrase "DC input terminals" is defined as "terminals for receiving a DC supply voltage."  The phrase "producing a control signal" is defined as  "serving as the origin of direct current that travels along a direct current path from the DC input terminals, through the filament or filaments, and to an input terminal of the control means, but which does not pass through the DC blocking means."  This control signal from the DC input terminals is sometimes referred to as the "DC control signal."

As used in Element A of Claim 1, the phrase "voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals" shall be understood in accordance with its ordinary meaning to one of ordinary skill in the field, when read in the context of the patent's claims and specification.

As used in Element D of Claim 1, the phrase "whenever at least one gas discharge lamp is removed from the output terminals or is defective" shall be given its ordinary meaning as

understood by one of ordinary skill in the filed, when read in the context of the patent's claims and specification.

Some of the requirements of Claim 1 are written in a different format called "means-plus-function," which I will now explain.

## MEANS-PLUS-FUNCTION CLAIMS

Along with the terms I just described, there are certain claim requirements that are written in what is called "means-plus-function" format, including the "control means" requirement and the "direct current blocking means" requirement. The patent laws permit requirements of a claimed invention to be expressed simply as a "means" or "way" for performing a certain function, without reciting in the claim the physical structure that actually performs the claimed function. Such "means-plus-function" requirements do not cover all of the structures that could perform the function set forth in the claim. Instead, they cover only the structure disclosed in the patent's specification to perform the claimed function and equivalents of that disclosed structure. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures are "equivalent" to one another. I have identified the structures described in the '529 patent that perform the functions recited in the means-plus-function requirements. You should apply my definitions of the functions and the structures described in the '529 patent for performing those functions, just as you must apply my definitions of any other claim terms.

There are two claim requirements in Claim 1 that use the means-plus-function format. The first requirement that is written in means-plus-function format is "control means capable of receiving control signals from the DC input terminals and from the resonant converter, and

operable to effectively stop the oscillations of the converter." This "control means" requirement recites three functions **ULT: , each of which has a separate corresponding structure.**[2]

The first function of the "control means" is "capable of receiving  control signals from the DC input terminals and from the resonant converter." **ULT:  The corresponding structure to this function is the control terminal CTa of a control circuit, as defined at column 3, line 59 through column 4, line 21 of the '529 patent.**

The second function of the "control means" is "operable to effectively initiate the oscillations." **ULT: The corresponding structures to this function are, to commence the start pulse, the diode 39, resistor 40, capacitor 42, and diac 44, and, to terminate the start pulse, the diode 34, resistor 35, capacitor 38, resistor 37,  and transistor 43, connected as described in the '529 patent**.

The third function of the "control means" is to "effectively stop oscillations." **ULT:  The corresponding structures to this function are the diode 29, resistor 30, resistor 32, capacitor 33, transistor 48 and diac 45, connected as described in the '529 patent.**

---

[2] ULT's position:  As set forth in this and the subsequent 3 paragraphs, ULT believes that the jury should be informed of the corresponding structures for each of the three functions in the "control means" requirement separately, as recognized and identified in the Court's claim construction opinion.  *See* Def. Resp. Br. 7."  Am. Mem. Op. and Order [ECF #107] at 24-26.  The Court specifically recognized that the parties "agree on the structure corresponding to two of the functions, and it further noted that the parties "agree that the structures corresponding to the 'effectively stop oscillations' function are the diode 29, resistor 30, resistor 32, capacitor 33, transistor 48, and diac 45 connected as described in the 529 patent."  *Id.*  Thus the Court has recognized that the three functions in the "control means" limitation have different corresponding structures, as set forth in the instructions proposed by ULT.  ULT's proposed instruction faithfully follows the case law, including that cited by LBC, which states that the specification must identify corresponding structure for each recited function of a means plus function limitation.  There is no dispute that the "control means" term includes three functions, each of which has a corresponding structure.

LBC's opposition:  The patent specification describes a control circuit for the preferred embodiment at Col. 3, line 59 through Column 4, line 21.  Am. Mem. Op. and Order [ECF #107] at 26 ("the specification of the '529 Patent discloses a structure, namely a control circuit, at column 3, line 59 through column 4, line 21").  This control circuit serves as the corresponding structure for the control means of Claim 1.  Defendant's attempt to further granulate this instruction is confusing and unnecessary, and it flies in the face of Federal Circuit case law, which mandates a focus on the overall structure.  *Odetics Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 2000) ("[T]he claim limitation is the overall structure corresponding to the claimed function.").

**LBC:   The corresponding structure for the "control means" requirement is the control circuit described at column 3, line 59 through column 4, line 21 of the '529 Patent.[3]**

The second requirement of Claim 1 that uses the means-plus-function format is the "direct current blocking means" requirement.   The function of the "direct current blocking means" is "operable to stop the flow of the control signal from the DC input terminals." The corresponding structure for this requirement is "a capacitor or diode connected to the heatable filament of the lamp."

All other words of the claims have their plain and ordinary meanings, as those words would be understood by a person of ordinary skill in the field, when read in the context of the patent.  I will now instruct you on what is meant by a person of ordinary skill in the art.

## LEVEL OF ORDINARY SKILL IN THE ART

A person of ordinary skill in the art is a person with a specific level of education, training, and experience in the field such that they understand what is being taught by a patent based on such background.  It is up to you to decide the level of ordinary skill in the field of the invention.  You should consider all of the evidence introduced at trial in making this decision, including: the educational level and experience of people working in the field, the types of problems faced by workers in the field and the solutions found for those problems, and the sophistication of the technology in the field.

---

[3]  LBC's position: For the reasons stated in the previous footnote, the corresponding structure should be identified in the clear and concise manner LBC has suggested above.

ULT's position: LBC's proposed instruction oversimplifies the corresponding structures for the three different functions that the patent recites within the "control means" limitataion.  In so doing, LBC's proposal is inaccurate and fails to provide the jury with the information and instruction it needs to understand and make use of the "control means" limitation in conducting infringement or invalidity analysis.  Just as both parties and the Court properly analyzed the "control means" limitation on a function-by-function and corresponding structure-by-structure basis for purposes of claim construction, so also the jury must understand and apply the "control means" limitation based on each of the three recited functions and their respective corresponding structures, not merely as the "control circuit described at column 3, line 59 through column 4, line 2."

Plaintiff contends that, for this case, the hypothetical person of ordinary skill in the relevant field is a person who, as of February 1, 1993, would have had:

(a) a bachelor's degree in electrical engineering degree, or equivalent, and five years of experience in electronic ballast design, or five years experience in power electronics with one year experience in ballast design; or (b) a Master's degree in electrical engineering or equivalent, and two years experience in electronic ballast design, or two years of experience in power electronics with one year experience in electronic ballast design. A person of ordinary skill in the art would also understand the basic electrical characteristics of fluorescent lamps, the practical application of electronic ballasts in the marketplace, key regulatory requirements that impact the use of electronic ballasts, and at least some knowledge of the products available from various vendors.

Defendant contends that a person of ordinary skill in the relevant field for purposes of this case is a hypothetical person who, as of February 1, 1993:

had a bachelor of science degree in electrical engineering, or an equivalent degree, and three to five years of experience in the field of lighting technology. This definition is flexible in that more advanced educational degrees could substitute for the specified industry experience and more extensive industry experience could substitute for the specified educational background.

Next, I will instruct you on how to determine whether the '529 Patent has been infringed by ULT.

## DETERMINING INFRINGEMENT

Once a patent has issued, infringement can occur if a person or entity, without the owner's permission, makes, uses, offers to sell, or sells the patented invention anywhere in the United States during a period of 20 years measured from the filing date of the earliest underlying patent application.  In this case, the 20-year exclusivity period of the '529 Patent ends in 2013.

In this case, Plaintiff has alleged that Defendant directly infringes the '529 Patent.  To prove infringement of any claim, the Plaintiff has the burden to persuade you by a preponderance of the evidence that the Defendant has infringed that claim.

When comparing claims, the Plaintiff need not prove that the Defendant had the intent to infringe the patent or that it knew its acts infringed the patent.  Good faith is not a defense to a claim of infringement.

**LBC:   There are two types of infringement: (1) "literal" infringement, and (2) infringement under the "Doctrine of Equivalents."   In this case, Plaintiff has accused Defendant of both types of infringement.  I will tell you more about these two types of infringement shortly, but first keep in mind that only the claims of a patent can be infringed.**[4]  You must compare the asserted patent claims, as I have defined each of them, to the Defendant's products to determine whether or not there is infringement. When comparing the claims to Defendant's products, you must consider each claim and each product individually, and you must reach your decision on infringement based on my instructions about the meaning and scope of the claims as they have been defined, the legal requirements for infringement, and the

---

[4] LBC's position:  Defendant's objections to the Doctrine of Equivalents are misplaced, as described in Plaintiff's Response to Defendant's Motion for Summary Judgment [ECF #135] at 26-33. LBC properly and timely disclosed its Doctrine of Equivalents position and should not now be precluded from presenting testimony about ULT's infringing products, some of which infringe under the Doctrine of Equivalents.

ULT objects to these sentences because they discuss the doctrine of equivalents, which LBC did not assert in this case until it served its expert reports, and even then only asserted with respect to a handful of accused products.  ULT has moved *in limine* to preclude LBC from presenting a doctrine of equivalents infringement theory at trial.

evidence presented to you by the parties.  I will now describe for you the legal requirements for infringement.

## INFRINGEMENT GENERALLY

I will first instruct you on what infringement means in a general sense.  Then I will identify several key elements that make up infringement.  In order to infringe a patent claim, a product must meet all the requirements of a claim.  A claim limitation is present if it exists in the Defendant's product as I have explained the language to you or, if I did not explain it, as it would be understood by one of ordinary skill in the art.

**LBC:  You should consider each of the asserted claims of the '529 Patent separately. However, not all claims of a patent must be infringed before a patent is infringed.  Plaintiff need only establish by a preponderance of the evidence that one claim is infringed, then "patent infringement" has been established.[5]**

## LITERAL INFRINGEMENT

A patent claim is literally infringed if the Defendant's product satisfies each and every requirement of that patent claim.  If the Defendant's product does not satisfy one or more requirements of a claim, the Defendant does not literally infringe that claim.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe, not to the patent's preferred embodiment of the claimed invention.  The same element of the accused products may satisfy more than one requirement of a claim.

---

[5] LBC's position:  It is important for the jury to understand that Plaintiff is not required to prove infringement of each and every claim of the patent or even infringement of every asserted claim; the jury should also understand that Defendant could infringe Claim 1 even if it does not infringe Claims 2 or 5.

ULT believes that this paragraph is redundant.  The same points are made elsewhere almost word for word in this jury charge.  It is also confusing and inaccurate in that it talks about the "patent" being infringed, instead of claims being infringed. Under U.S. law, one cannot infringe a patent and a jury is not asked to determine whether there has been "patent infringement"; at most, one infringes one or more specific claims of a patent, and the jury is asked to determine if any asserted claim has been infringed.

As I have instructed you, the asserted claims include two requirements that use the means-plus-function format:  the "control means" requirement and the "direct current blocking means" requirement.  To prove that an accused product literally meets a means-plus-function requirement, a patent owner must prove two things by a preponderance of the evidence.

First, an accused product needs to contain a structure that performs the same function as the function recited in the limitation.  Second, the structure of the accused product that performs that function must be the same as or "equivalent" to the corresponding structure disclosed in the patent specification for performing that function.   If you find the same or an equivalent structure in the accused product, the requirement is  satisfied by that product  for purposes of literal infringement.

The equivalent structure determination must be  decided from the perspective of a person of ordinary skill in the art.  A structure is "equivalent" if such an ordinary skilled person would consider the differences between the accused structure and the structure in the patent specification to be "insubstantial."

One way to determine whether the differences between the two structures are "insubstantial" is to determine whether or not the accused structure performs the same function, in substantially the same way, to achieve substantially the same result as the structure disclosed in the patent specification.  In deciding whether the differences would be "insubstantial," you may also consider whether or not persons of ordinary skill in the field of the invention believed that the structure disclosed in the specification and the structure of the accused product were interchangeable at the time the '529 Patent was issued, though interchangeability of one structure for another does not suffice to show that those structures are equivalent.  The structure in the accused product must also have been available at the time the '529 Patent issued.

14

**LBC**:  In evaluating whether the differences are insubstantial, you must focus on the structures as a whole,[6] and you must consider whether the differences add anything of significance to the structure, material, or acts disclosed in the patent specification.[7]  If the physical structure disclosed in the patent is of little importance to the claimed invention, there may be a broader range of equivalent structures than if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention.[8]  You must decide whether a rigid comparison of physical structures in a vacuum may be inappropriate in this case.[9]  The law does not mandate an equivalency comparison that focuses heavily or exclusively on physical structure.[10]  A "component-by-component" analysis is not appropriate.[11]  The individual components, if any, of an overall structure that corresponds to the claimed function are not claim requirements.[12]  Rather, the claim requirement is the overall structure corresponding to the claimed function.[13]  Structures with different numbers of parts may still be equivalent, thereby meeting the claim requirement.[14]  You cannot rule out equivalents of the overall structure merely because the

---

[6] *Odetics Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1268 (Fed. Cir. 2000) (focusing on "overall structure"); *Trinity Indus, Inc. v. Road Sys., Inc.,* 121 F. Supp. 2nd 1028, 1048 (E.D. Tex. 2000) (same).

[7] *Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1043 (Fed. Cir. 1993).  ("an equivalent results from an insubstantial change which adds nothing of significance to the structure, material, or acts disclosed in the patent specification.").

[8] *IMS Tech. Inc. v. Haas Automation Inc.*, 206 F.3d 1422, 1435-36 (Fed. Cir. 2000).

[9] *Id.*

[10] *Id.*

[11] *Medical Device Techs., Inc. v. C.R. Bard, Inc.,* 7 Fed. Appx. 945, 949 (Fed. Cir. 2001); *see also Caterpillar Inc. v. Deere & Co.,* 224 F.3d 1374, 1380 (Fed. Cir. 2000).

[12] *Odetics Inc. v. Storage Tech.  Corp.,* 185 F.3d 1259, 1268 (Fed. Cir. 2000) (internal citations omitted); *see also Trinity Indus., Inc. v. Road Sys., Inc.*, 121 F. Supp. 2d 1028, 1048 (E.D. Tex. 2000).

[13]  *Id.*

components of potentially equivalent structures are combined or arranged in a different way or replaced with substitute components.[15]

## LBC:  INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[16]

If a company makes or sells products that do not meet all of the requirements of a claim and thus do not literally infringe that claim, there can still be infringement if those products satisfy that claim under the Doctrine of Equivalents.

Under the Doctrine of Equivalents, a product infringes a claim if the accused product contains identical or "equivalent" elements corresponding to each and every requirement of the claim.  You may find that aportion of the accused product is equivalent to a claim

---

[14]  *Id.*

[15]  *Trinity Indus., Inc. v. Road Sys., Inc.*, 121 F. Supp. 2d 1028, 1048 (E.D. Tex. 2000).

The instructions in this paragraph are critical because they inform the jury on the key issue in the case – an issue on which Defendant's case hangs.   ULT wants the jury to measure "equivalency" by conducting a component-by-component analysis – an analysis the Federal Circuit has expressly and repeatedly characterized as improper.

ULT's position:  ULT objects to the entirety of this paragraph, for several reasons.  First, it is not included in *any* of the pattern jury instructions.  It is a lengthy legal argument that may be appropriate for a brief but is inappropriate for a jury charge, as is clear from the fact that pattern jury instructions never include such detailed legal argument on this subject.   Second, LBC selectively paraphrases portions of the cited decisions out of context, and thus paints an incomplete and misleading picture of the law that seems designed to confuse the jury.   Third, this paragraph seeks to have the Court instruct the jury on plaintiffs' view of the case—as evidenced by the fact that LBC's argument in support of the instruction seeks to anticipate and rebut what "ULT wants the jury to measure"—and as such would be extremely prejudicial to ULT.   It adds nothing of value to the instructions given in the preceding paragraphs which are taken from pattern instructions.

This instruction is also designed to inaccurately suggest that ULT is asking the jury to engage in an impermissible analysis.  As explained in detail in ULT's Motion for Summary Judgment and Reply in Support thereof, ULT does no such thing and LBC apparently does not understand what a "component-by-component analysis" actually is.

If, however, the Court is inclined to include all or part of this paragraph in the jury charge, ULT requests the opportunity to submit additional language to include in the jury charge to present its own favored excerpts from Federal Circuit precedents in order to provide a more balanced and accurate statement of the law on means-plus-function structural equivalency.  This would include statements and examples from Federal Circuit cases cited in ULT's Motion for Summry Judgment.

[16]  LBC's position:  Defendant's objections to the Doctrine of Equivalents are misplaced, as described in Plaintiff's Response to Defendant's Motion for Summary Judgment [ECF #135] at 26-33 and as discussed further in previous footnotes.

ULT's position: ULT has moved to preclude LBC from presenting any testimony or evidence as to infringement under the doctrine of equivalents because such a theory was not timely disclosed.  Therefore, no jury instruction on the doctrine of equivalents is necessary.  To the extent that the Court allows LBC to present a doctrine of equivalents theory, ULT does not object to the instruction in this section.

requirement  (even if that requirement is not satisfied literally) if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial."   One way to decide whether any difference between the claim requirement and the accused product is "insubstantial" is to consider whether, as of the time of the alleged infringement, the product in question performed substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed requirement.   In order to prove infringement by "equivalents," LBC must prove such equivalency by a preponderance of the evidence.

If the claim requirement that is not met by the accused product is a "means-plus-function" requirement, and if you determined that there is no "literal infringement" because there is no structure in the accused product that performs the identical function, you may decide that the structure of the accused product nonetheless corresponds to the claim requirement under the Doctrine of Equivalents if it performs an "equivalent" function and has an "equivalent" structure.

On the other hand, if you find that the accused product has no corresponding structure to the structure that I defined as performing that function, then you must find that there is no infringement under the Doctrine of Equivalents.

This is the case even if you find the accused product has some other structure that performs the specific function of the means-plus-function requirement.  In other words, for a means-plus-function requirement, a determination that there is no "equivalent" structure for purposes of "literal infringement" precludes you from finding infringement under the "Doctrine of Equivalents."[17]

---

[17]  Plaintiff's Support: Model Patent Jury Instructions § 3.1c (Fed. Cir. Bar Assoc. Feb. 18, 2010).

**One way to decide whether any difference between an asserted claim limitation and a part of the accused product is insubstantial is to consider whether, as of the time of the alleged infringement, the portion of the product in question performed substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed requirement.**

**In deciding whether any difference between a claim requirement and the product is insubstantial, you may also consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement.  The same element of the accused product may satisfy more than one element of a claim.**

## INDEPENDENT AND DEPENDENT CLAIMS

My instructions so far have related to independent claims.  Patent claims may exist in two forms, referred to as independent and dependent claims.  An independent claim does not refer to any other claims of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  Claim 1 of the '529 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the requirements of the other claim to which it refers, as well as the additional requirements recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim to which it refers.

Claims 2 and 5 are dependent claims.  Both of these claims refer to Claim 1.  To determine what a dependent claim covers, the words of that dependent claim and  the claim to which it refers must be read together.

Because a dependent claim includes all the requirements of the independent claim to which it refers, if you find that claim 1 is not infringed, then you cannot find that claim 2 or claim 5 is infringed.

## WILLFUL INFRINGEMENT

In this case, Plaintiff contends that Defendant infringed and, further, that Defendant infringed willfully. If you have decided that Defendant has infringed a claim or claims and the claims is/are valid, you must go on and address the additional issue of whether or not this infringement was willful. The mere fact that the Defendant infringed the patent is not enough to prove willfulness.

To prove willful infringement, the Plaintiff must prove by clear and convincing evidence that Defendant acted recklessly . To prove Defendant acted recklessly, the Plaintiff must satisfy a two-part test. The first part of this test is objective; the second part is subjective, which means that you must attempt to ascertain the Defendant's state of mind.

First, Plaintiff must prove that the Defendant acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The Defendant's state of mind is not relevant for this part of the inquiry. Here, you should focus on whether a reasonable person in the position of the Defendant, after learning of the patent, could have reasonably believed that he or she did not infringe or that the patent was invalid. Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness. If you conclude that a reasonable person in the Defendant's position could not have held such a belief, then you must proceed to the second part of the test.

The second part of the test looks at the Defendant's state of mind. If you find that the Defendant proceeded in the face of an unjustifiably high risk, then you must determine whether

that risk was known or obvious to the Defendant.  The Plaintiff must prove that the Defendant actually knew, or it was so obvious that the Defendant should have known, that its actions constituted infringement of a valid patent.  In deciding whether the Defendant's actions satisfied this second part of the test, you should consider all of the facts surrounding the alleged infringement.

In making the determination as to willfulness, consider all the facts surrounding the alleged infringement, including but not limited to the following:

(1)     whether the Defendant acted in a manner consistent with the standards of commerce for its industry;

__LBC__:  **(2)      whether the Defendant intentionally copied a product covered by the patent;[18]**

(3)     whether or not there is a reasonable basis to believe that Defendant did not infringe or had a reasonable defense to infringement;

(4)     whether or not Defendant made a good-faith effort to avoid infringing the '529 patent, for example, whether Defendant attempted to design around the '529 patent; and

(5)     whether or not Defendant tried to cover up its infringement.

---

[18] LBC's position:  LBC has, in fact, provided expert opinions suggesting that ULT copied the '529 Patent.

ULT's position:  ULT objects to this sentence because, while that may be a factor in determining willfulness in the abstract,  there is no allegation in this case that ULT copied any product covered by the patent.  Moreover, to the extent that LBC's experts have opined that ULT engineers "copied" the '529 patent, ULT has objected to and moved to strike those opinions as unfounded.

# VALIDITY[19]

Defendant contends that the asserted claims of Plaintiff's Patent are not valid. Patent invalidity is a defense to patent infringement. Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider. As you consider these issues, remember that Defendant bears the burden of proving that it is highly probably that the claims are invalid.

**LBC: Each claim of a patent issued by the United States Patent Office is entitled to a presumtion of invalidity.[20] In order to overcome the presumption of validity**. Defendant must show it is highly probable the asserted claims of the patent are invalid. **In deciding whether Defendant has met this "highly probable" burden, you may afford greater weight to "prior art" that was not considered by the Patent Office prior to issuing the patent.[21]**

---

[19] LBC's position: LBC contends that all of the alleged prior art (except for the Zuchtiegel patent) is inadmissible because it is hearsay and has not been properly authenticated. Further, Defendant's invalidity "expert" is not a person of ordinary skill in the art of lighting ballasts and lighting ballast design, as detailed in Plaintiff's Motion to Strike.

ULT's position: LBC's motion to strike Professor Giesselmann is unfounded, for the reasons explained in ULT's Response to LBC's Motion to Strike. In brief, LBC did not apply the proper test under *Daubert* and FRE 702, Prof. Giesselmann easily satisfies the proper test, and in any case he is one of extraordinary skill in the art under any reasonable standard. ULT will respond to LBC's evidentiary objections to certified translations of public records of the Japanese government at the appropriate time, if LBC persists in maintaining those objections.

[20] Model Patent Jury Instructions, § 5.1 Committee Note (Nat'l Jury Instruction Project June 17, 2009) ("Patents are entitled to a presumption of validity . . . . Some courts . . . instruct the jury on the presumption.")

[21] LBC's position: *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-1356 (Fed. Cir. 2000); *see also* previous footnote.

ULT objects to these sentences because they refer to the presumption of validity in combination with the heightened burden of proving invalidity, an approach that has been criticized by many courts. Support for ULT's Position: "There is now general agreement" that "juries … should not be told that there is a presumption of validity, which would be redundant and likely confusing." PATENT CASE MANAGEMENT JUDICIAL GUIDE, § 7.3.4.3 (Fed. Jud. Ctr. 2010). *See also* MODEL PATENT JURY INSTRUCTIONS, § 5.1 cmt. n. (Nat'l Jury Instruction Project June 17, 2009) ("In light of the procedural role of the presumption of validity, instructing the jury on the presumption in addition to informing it of the highly probable burden of proof may cause jury confusion as to its role in deciding invalidity. This instruction, therefore, omits any reference to the presumption of validity."); MODEL PATENT JURY INSTRUCTIONS, §

## PRIOR ART

What came before the invention is referred to as "prior art."  The Defendant is relying on various items of prior art.  In order to do so, the Defendant must prove that the items fall within one or more categories of prior art recognized by patent law.  These categories include:

(1)       anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention; and

(2)       anything that was patented or described in a printed publication anywhere in the world before the date of the invention, or more than one year before the effective filing date of the patent-in-suit.

In this case, the prior art is limited to the following: **<u>ULT:</u>  JP 1-276794 ("JP '794"), JP 61-153997 ("JP '997"), JP 1-157099 ("JP '099"), JP 3-53799 ("JP '799"),** U.S.  Patent 4,710,682  ("U.S. '682"), **Drawing No. FZ40228993, JP 2-144890 ("JP '890"), JP 3-119693 ("JP '693").**[22]  You must decide whether any of these items anticipate the asserted claims of the '529 Patent.

I'm now going to instruct you further on the invalidity defenses that you will have to evaluate in this case.  You may consider the following invalidity defenses and no others.

---

B.4.1 (Fed. Cir. Bar Assoc.  November 12, 2009) (omitting any reference to the presumption of validity); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA,  § B.4.1 (November 29, 2007) (omitting any reference to the presumption of validity); *Chiron Corp.  v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (finding district court did not err in declining to instruct jury on the presumption of validity); *Avia Group Int'l, Inc. v. L.A.  Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (the presumption of validity "does not constitute 'evidence' to be weighed against a challenger's evidence.").

[22]  Plaintiff objects. Except for U.S. Patent No. 4,710,682, all of the alleged "prior art" is subject to Plaintiff's pending evidentiary objections.  All of the Japanese references are hearsay that fail to meet any hearsay exception.  Further, they have not been properly authenticated.

ULT responded to this objection in a prior footnote.

## ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, the Defendant must prove by the clear and convincing evidence that the claimed invention is not new.

Anticipation must be determined on a claim-by-claim basis.  In this case, the Defendant contends that all of the asserted claims of the '529 Patent are anticipated.  To anticipate a claim, each and every requirement of the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the requirements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular publication.  The prior art does not have to use the same words as the claim, but the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.  **ULT:  The same requirement of a piece of prior art may satisfy more than one requirement of a claim.**[23]

### OBVIOUSNESS

Defendant also contends that the asserted claims of the '529 Patent are invalid because, according to Defendant, the invention was "obvious."  **LBC:  Defendant bears the burden of**

---

[23] LBC's position:  This sentence is not supported by any authority and is likely to confuse the jury.

ULT's position:  It is appropriate to include this sentence to parallel the infringement section, which makes the same point as to accused products.

proving obviousness by clear and convincing evidence.[24]  **ULT:  Not all innovations are patentable**.[25]  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the patent application was filed.  This means that even if all other requirements of the claim cannot be found in a single prior art reference it is highly probable that a person of ordinary skill in the field of art, who knew about this prior art, would have come up with the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that in 1993 there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does.

**ULT:  There is no single way to define the line between true inventiveness on one hand, which is patentable, and the application of common sense and ordinary skill to solve the problem on the other hand, which is not patentable.  For example, market forces or other design incentives may be what produced the change rather than true inventiveness.  You may consider whether the change is merely the predictable result of using prior art elements according to their known functions or whether it was a result of true inventiveness.**

---

[24] ULT objects to this sentence as redundant and unnecessary.

[25] Support for ULT's position:  "Obviousness" section of the jury charge in *Saffran v. Johnson & Johnson*, 2:07-CV-451 (E.D. Tex. 2011), which is the source from which LBC has taken most of the remainder of the proposed jury charge on this subject.  Here and later LBC attempts to selectively to cut and paste portions of the jury charge from the *Saffran* case that favor LBC.

Support for LBC's opposition: most of the *Saffran* jury charge was based on the Model Patent Jury Instructions prepared by The National Jury Instruction Project, June 17, 2009.  But this particular sentence finds no support there or elsewhere.  The sentence, and especially its use of the word "innovations," is misleading.

**You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of the elements claimed in the patent.**

**Also, you should consider whether innovation applies a known technique that has been used to improve a similar design in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed invention was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.**[26]

**LBC:  In order to find obviousness, the Defendant must have specified a combination that meets the criteria I just mentioned.  Here, Dr. Giesselmann has opined on certain combinations of prior art.**

**You are limited to these combinations only.  You may not make combinations of prior art yourself outside of these combinations to find obviousness.**[27]

Another consideration you must use in your obviousness determination is that you must be careful not to find obviousness using the benefit of hindsight.  Many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field as of February 1, 1993, and you should not consider what is known today or what is learned from the teaching of the patent.

---

[26] Support for ULT's position:  "Obviousness" section of the jury charge in *Saffran v. Johnson & Johnson*, 2:07-CV-451 (E.D. Tex. 2011).  Again, LBC should not be permitted selectively to cut from and add to the jury charge from the *Saffran* case in a way that removes all explanation of why a claim might be obvious while keeping the explanation of why a claim might be non-obvious.

Support for Plaintiff's opposition: *See* previous footnote.  The *Saffran* charge has served as a useful template but need not be followed on instructions that add excessive or unnecessary verbiage.

[27] ULT's position:  This section (or its equivalent) is not included in the jury instructions in the *Saffran* case, which is the basis for the remainder of the section on obviousness, or in any of the pattern jury instructions.  ULT is unaware of any authority holding that the jury must be instructed that it can find obviousnesses based only on certain combinations.

Plaintiff's position:  Dr. Giesselmann's expert report lists only certain combinations of prior art, and the jury should not be permitted to freely and randomly mix-and-match prior art references to form combinations on which Defendant has proffered no expert opinions.

Your ultimate conclusion aboutwhether or not a claim is obvious should be based upon the determination of a number of factual decisions.  First, you must decide the level of ordinary skill in the field that someone would have hadas of February 1, 1993.  Second, you must decide the scope and content of the prior art relied on by the Defendant.  Third, you must decide what differences, if any, existed between each claim of the '529 Patent and the prior art.

Finally, in making your obviousness determination, you should consider any of the following factors that you find have been shown by the evidence.  The following factors relate to the origin of the claimed invention and may indicate that a claim is not obvious: (1) commercial success of a product due to the merits of the claimed invention; (2) a long-felt need for the solution provided by the claimed invention; (3) unsuccessful attempts by others to find the solution provided by the claimed invention; **LBC:  (4) evidence that others have copied theinvention;**[28] (5) unexpected and superior results from the claimed invention; (6) acceptance by others of the claimed invention, as shown by praise from others in the field or from licensing of the claimed invention; and (7) other evidence tending to show non-obviousness.

Factors that tend to show obviousness: (1) independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and (2) other evidence tending to show obviousness.

---

[28] ULT objects.  ULT has moved *in limine* to preclude LBC from making allegations of copying before the jury.  In addition, in the context of secondary considerations of non-obviousness, alleged "copying" is categorically irrelevant unless the *claimed* invention is being copied. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (evidence of copying a feature in the patent owner's commercial product "is legally irrelevant unless the ... feature is shown to be an embodiment of the claims.")  The alleged evidence of "copying" has not been tied to the *claimed* inventions of the '529 Patent, as explained in ULT's Motion to Strike, Limit, or Exclude LBC's Expert Witnesses.

LBC's position:  As stated elsewhere, LBC should not be precluded from offering its evidence of copying, including expert opinions on this topic.

You may consider the presence of any one of the above factors that tend to show non-obviousness as an indication that the claimed invention would not have been obvious to a person of ordinary skill in the art as of February 1, 1993.  And the presence of any of the above factors that tend to show obviousness may be considered by you as an indication that the claimed invention would have been obvious as of February 1, 1993.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

## LACHES AND WAIVER

ULT contends that LBC is not entitled to recover damages for acts that occurred before it filed a lawsuit because, according to ULT: (1) LBC and Mr. Bobel delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) ULT has been or will be prejudiced in a significant way due to the delay in filing the lawsuit. This is referred to as laches. ULT must prove delay and prejudice by a preponderance of the evidence.

Whether the delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. This presumption shifts the burden of proof to LBC to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if LBC presents such evidence, the burden of proving laches remains with ULT.  Laches may be found for delays of less than six years if there is proof of unjustifiable delay causing material prejudice to ULT.  Facts and circumstances that can justify a long delay can include:

(1) being involved in other litigation during the period of delay;

(2) being involved in negotiations with ULT during the period of delay;

(3) poverty or illness during the period of delay;

(4) wartime conditions during the period of delay;

(5) being involved in a dispute about ownership of the patent during the period of delay; or

(6) minimal amounts of allegedly infringing activity by ULT during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if ULT suffered material prejudice as a result of the delay. Prejudice to ULT can be evidentiary or economic. Whether ULT suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in ULT not being able to present a full and fair defense on the merits to LBC's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not ULT changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if ULT could have switched to a noninfringing product if sued earlier), and also whether ULT's losses as a result of that change in economic position likely would have been avoided if LBC had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and

significant prejudice). You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case. [29]

ULT also contends that LBC is not entitled to recover damages for any infringement because Mr. Bobel waived his right to enforce the '529 Patent.  In order to prove waiver, ULT must show by clear and convincing evidence either that Mr. Bobel, with full knowledge of the material facts, intentionally gave up his right to enforce the '529 Patent, or that his conduct was so inconsistent with an intent to enforce his rights that it induced a reasonable belief that he had given up his rights.[30]

## DAMAGES

If you find the Defendant has infringed any of the asserted claims of Plaintiff's patent and that the claims are valid, then you should consider the amount of money Plaintiff should receive as damages.  Plaintiff has the burden of proving the amount of damages caused by the Defendant's infringement by a preponderance of the evidence.

Even though I am instructing you on how you should measure damages, this should not be taken to mean that I believe the Defendant has infringed or that the patent is valid.  These are issues for you to resolve under the instructions I have given you.  I am instructing you on damages only so that you will have guidance should you decide that Plaintiff is entitled to recover damages.

If you find that there has been infringement, then Plaintiff is entitled to an award of damages adequate to compensate him for the infringement, but in no event less than a reasonable

---

[29] ULT's position: MODEL PATENT JURY INSTRUCTIONS, § B.5.2 (Fed. Cir. Bar Assoc. November 12, 2009).

LBC's opposition: LBC objects to these new instructions, which were added at the eleventh hour and have no supporting evidence.

[30] ULT's support:  *Qualcomm, Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

LBC's opposition:  *see* previous footnote.

royalty for the use Defendant made of the invention.  Here, the Plaintiff is asking for damages in the form of a reasonable royalty.

The amount of damages the Plaintiff can recover is limited to those acts of infringement by the Defendant that occurred within the six-year period preceding the date this lawsuit was filed, or that occurred since the date the Defendant had notice that it infringed the '529 Patent, whichever period is shorter.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the '529 Patent.  This notice is effective as of the date given.

Constructive notice means that the patent holder complied with the marking requirement of the patent laws.  "Marking" means that substantially all of the products made, offered for sale, or sold under the '529 Patent are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  The Plaintiff has the burden of establishing substantial compliance with the marking requirement.  To do so, the Plaintiff must show it is more probable than not that substantially all of the products made, offered for sale, or sold under the '529 Patent were marked, and that the patent holder made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '529 Patent marked substantially all of their products.

Your job is to calculate damages from the date the Defendant received either actual or constructive notice, whichever was first.  You should not award damages for any infringement by the Defendant occurring before it first received actual or constructive notice of the '529 Patent.

The Defendant contends that the marking requirement was not complied with, and so the Plaintiff cannot be awarded damages for any infringement before receipt of actual notice.  The

Plaintiff contends that the marking requirement was complied with prior to ULT receiving actual notice, and so it may be awarded damages from February 34, 2003, which is the date that is six years before this lawsuit was filed.

Generally, a reasonable royalty is defined by patent law as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  **LBC:  A royalty is a payent made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patnet holder and the infringer taking place just before the time when the infringing sales first began.   In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.[31]   ULT:  A royalty is the amount of money a licensee pays to a patent owner for each article the licensee makes or sells under the patent.  A reasonable royalty is the amount of money a willing patent owner would have found acceptable and a willing prospective licensee would have been willing to pay and yet be able to make a reasonable profit[32], in a hypothetical negotiation taking place just before the time when the infringing sales first began.  A reasonable royalty can take several forms, such as a lump sum payment, a dollar amount per unit rate, or a percentage rate of sales.[33]**  In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first allegedly infringed the patent and the facts that existed at the time.

---

[31] Model Patent Jury Instructions § 6.6 (Nat'l Jury Instruction Project June 17, 2009).

[32] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970).

[33] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009).

Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity. The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty. You are to assume that both parties to that hypothetical negotiation understood the patent to be valid and infringed and that the licensee would respect the patent. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining a reasonable royalty rate, you should consider all of the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determinations are:

(1)     whether the patent holder had an established royalty for licensing the invention;

(2)     the nature of the commercial relationship between the patent owner and the licensee such as whether they were competitors or whether their relationship was that of an inventor and promoter;

(3)     the established profitability of the patented product, its commercial success and its popularity at the time;

(4)     whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5)     the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(6)     the rates paid by the licensee for the use of the other patents comparable to the Plaintiff's patent;

(7)     whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

(8)     the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(9)     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

(10)    the extent to which the infringer used the invention and any evidence probative of the value of such use;

(11)    the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12)    the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)    the opinion and testimony of qualified experts;

(14)     any other factors which in your mind would have increased or decreased the royalty

the infringer would have been willing to pay and the patent owner would have been

willing to accept, acting as normal, prudent business people.

You must not award Plaintiff more damages than are adequate to compensate for the

infringement nor should you include any additional amount for the purpose of punishing the

Defendant or setting an example.  You may not include damages that are speculative, damages that

are only possible, or damages that are based on guesswork.

## FINAL INSTRUCTIONS

Nothing that I may have said or done during the course of this trial is intended to indicate

any view of mine as to which party should, or should not, win this case.  As I instructed you

previously, the jury is the sole judge of the credibility of the testimony and the weight to be given

the evidence.

These instructions are given to you as a whole, and you are not to single out one instruction

alone as stating the law, but must consider the instructions as a whole.  You have heard all of the

evidence in the case, and you have heard the argument of counsel.  The Court has given you the

charge in this case.  In a few moments, you will retire to the jury room, select one of your members

to act as a foreperson, and begin performing the function for which you have been chosen and for

which you have been empanelled, in accordance with the oath you took as jurors.  You will

remember that at the beginning of the trial, the Court admonished you not to discuss the case with

each other until it was submitted to you.

Now is the time for you to begin your discussion, and you certainly may express an opinion

from the evidence that you have heard and use any reasonable means to persuade other members of

the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks

the truth, and which does justice to all parties without favor, bias, or prejudice in any particular way, either for or against any party to this lawsuit.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion if convinced it is erroneous.  But, do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  Your verdict must be unanimous.  As soon as you have reached a verdict, you will let this fact be known to the officer who will be waiting upon you and he will report to the court.

Your verdict will be in the form of Questions for you to answer.  You will take these Questions to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form and then advise the Court Security Officer that you have reached a verdict.  During your deliberations, you may have any of the exhibits that have been offered into evidence, and the Court will send them to you upon written request.  If you desire further instructions, your foreperson may make this known in writing, and the Court will try to comply with your wishes.  All communications with the Court must be in writing, but at no time should you indicate to the Court or to anyone else how the jury is divided in answering any particular Question.

Any notes that you have taken during this trial are only aides to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the recollection or impression of each juror concerning the testimony.

You will now go to the jury room, select one of your members as foreperson, and begin your deliberations.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.  7:09-CV-00029-O |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| UNIVERSAL LIGHTING TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## VERDICT FORM

### Section No.  I – Question Regarding Infringement

### QUESTION NO.  1 – INFRINGEMENT OF THE '529 PATENT

Do you find by a preponderance of the evidence that the Universal Lighting Technologies products listed below have **ULT: literally** infringed Claims 1, 2, or 5 of the '529 patent **LBC:, either literally or under the doctrine of equivalents**?[34]  Answer "YES" or "NO" as to each product and each claim.

| Products[35] | Claim 1 | Claim 2 | Claim 5 |
|---|---|---|---|
| B254PUNV-D (Gen D) (Group 1 representative product): | | | |
| B132PUNVHP-A (Gen A) (Group 2 representative product): | | | |
| B224PUNV-C (Gen A) (Group 3 representative product): | | | |
| B432PUNVHP-A (Gen A) (Group 4 representative product): | | | |

---

[34] The parties dispute whether LBC should be permitted to argue for infringement under the doctrine of equivalents, as discussed earlier.

[35] The parties continue to discuss the question of representative products, and may be able to present the Court with a modified version of this chart identifying fewer representative products at some point prior to the jury charge.

| | | | |
|---|---|---|---|
| C2642UNVxxx (Gen E)<br>(Group 5 representative product): | | | |
| C213/218UNVxxx (Gen E)<br>(Group 6 representative product): | | | |
| B254PUNV-D (Gen E)<br>(Group 8 representative product): | | | |
| C2642UNVxxx (Gen F)<br>(Group 9 representative product): | | | |
| C2642/347xxx (Gen A)<br>(Group 10 representative product): | | | |
| ES5010GT/HT (Gen A)<br>(Group 11 representative product): | | | |
| ES4800A<br>(Group 12 representative product): | | | |
| ES5847K (Gen A)<br>(Group 13 representative product): | | | |
| ES5825K (Gen A)<br>(Group 14 representative product): | | | |

**Section No.  II – Questions Regarding Invalidity**

*If you have answered "NO" to all of Question 1 you do not need to consider the questions below.  If you have answered "YES" to any part of Question 1, then for each claim that you have entered such an answer, you must respond to the questions below.*

**QUESTION NO.  2 – ANTICIPATION**

**LBC**:  **Do you find by clear and convincing evidence that any of the following claims of the '529 Patent are invalid as anticipated? Answer "YES" or "NO" as to each.**

Claim 1 of the '529 Patent                    _____

Claim 2 of the '529 Patent                    _____

Claim 5 of the '529 Patent                    _____

**ULT**:  **Do you find by clear and convincing evidence that any of the following claims of the '529 Patent are invalid as anticipated?  Answer "YES" or "NO" as to each reference and each claim:**

| Prior Art Reference | Claim 1 | Claim 2 | Claim 5 |
|---|---|---|---|
| JP '099: |  |  |  |
| JP '997: |  |  |  |
| JP '799: |  |  |  |
| JP '794: |  |  |  |
| JP '890: |  |  |  |
| U.S. '682 |  |  |  |

**QUESTION NO.  3 – OBVIOUSNESS**

Do you find by clear and convincing evidence that any of the following claims of the '529

Patent are invalid as obvious? Answer "YES" or "NO" as to each.

Claim 1 of the '529 Patent　　　　　＿＿＿＿＿＿＿＿

Claim 2 of the '529 Patent　　　　　＿＿＿＿＿＿＿＿

Claim 5 of the '529 Patent　　　　　＿＿＿＿＿＿＿＿

**<u>Section No.  III – Questions Regarding Damages and Willfulness</u>**

**QUESTION NO. 4 – DAMAGES**

*Please answer the following question only if you answered "YES" to any part of Question 1 and you answered "NO" for the same claim for each of Questions 2-3.*

What sum of money, if any, do you find from a preponderance of the evidence is adequate to compensate Plaintiff for Defendant's conduct that you found to infringe? Provide the amount in dollars and cents if any, or none.

$_____

**<u>ULT</u>:  If you have set forth a damages number above, does that award of damages reflect a lump sum payment for past and future practice of the infringed asserted claims? Answer "YES" or "NO":  _____**[36]

---

[36] Plaintiff objects that this instruction is confusing to the extent it refers to or contemplates future infringement.

**QUESTION NO.  5 – WILLFUL INFRINGEMENT**

*Please answer the following question only if you answered "YES" to any part of Question 1 and*

*you answered "NO" for the same claim for each of Questions 2-3.*

For any of the following claims for which you answered "YES" to any product in Question

1, do you find by clear and convincing evidence that such infringement was willful?

Answer "YES" or "NO":  _____