CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

2011 JUN 17  PM 8: 14

DEPUTY CLERK

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.  7:09-CV-00029-O |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| UNIVERSAL   LIGHTING   TECHNOLOGIES, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

You have heard the evidence presented by the parties and the arguments of their respective

attorneys.  It is now my duty to give you the charge in this case.  It will be an oral charge and is

given in an effort to assist you in your deliberation in deciding the issues you must decide to reach

a fair and impartial verdict in this case.  Perhaps this function of the Court is the most important

one that the Court performs in the trial, so I ask you to pay close attention to my remarks.

You will remember that, at the beginning of this trial, I gave you some general instructions

and definitions.  Rather than repeat them, I ask you to recall them now in deciding the facts and

issues that you are to decide.  As I instructed you at the beginning of trial, you are the exclusive

judges of the facts, the credibility of the evidence, and the weight to be given the testimony of the

witnesses.

You are to perform your duty without bias or prejudice to any party.  The law does not

permit jurors to be governed by sympathy or prejudice.  Corporations and all other persons are

equal before the law and must be treated as equals in a court of justice.  The Court and the parties

expect that you will carefully and impartially consider all of the evidence, follow the law as I will

1

give it to you, and reach a just verdict. You are instructed that all persons, including the Plaintiff and the Defendant in this case, stand equal before the law, and are to be dealt with as equals in this Court.

I will now briefly review the contentions of the parties and give you some additional instructions and definitions that will guide you in deciding the issues or facts that you must resolve in this case.

## PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES

The patent claims in issue are Claims 1, 2 and 5 of U.S. Patent 5,436,529, which has been referred to as "the '529 Patent." As a group, I will refer to these claims of the '529 Patent as "the asserted claims."

The Plaintiff, LBC, contends that the Defendant, ULT, has infringed claims 1, 2, and 5 of the '529 Patent by manufacturing and selling electronic lighting ballasts that include all of the requirements of those claims. Plaintiff contends it is entitled to damages to compensate for Defendant's alleged infringement, in the form of a reasonable royalty. Plaintiff also contends that ULT has willfully infringed the asserted claims.

ULT denies Plaintiff's claims and has asserted its own counterclaims on non-infringement and invalidity of the '529 patent. ULT contends that its electronic lighting ballasts do not infringe the asserted claims of the '529 Patent. ULT also contends the asserted claims are invalid. As a result, ULT contends that Plaintiff is not entitled to any damages. ULT also denies that it has willfully infringed any of the asserted claims.

Your job is to decide whether Defendant has infringed any of the asserted claims and whether each of the asserted claims are valid. If you decide that any claim of the '529 patent has been infringed and is valid, you will then need to decide any money damages to be awarded to

Plaintiff to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take any finding of willful infringement into account later.

## BURDENS OF PROOF

The Plaintiff bears the burden of proof by a preponderance of the evidence that the Defendant infringed the asserted claims of the '529 Patent. In other words, LBC must show that ULT's infringement is more probable than not.

The Plaintiff also has the burden of proof by a preponderance of the evidence for the amount of damages caused by Defendant's infringement. To establish willful infringement, Plaintiff bears the burden of proof by clear and convincing evidence that the Defendant's infringement was willful.

The Defendant bears the burden of proof by clear and convincing evidence that the asserted claims of the '529 patent are invalid.

To review, "preponderance of the evidence" means that you must be persuaded by the evidence that the claim is more probably true than not true. Clear and convincing evidence is a higher standard than proof by preponderance of the evidence. Clear and convincing evidence means the party must persuade you that it is highly probable that the facts are as the party contends. Nevertheless, the clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is "beyond a reasonable" doubt.

I will now give you instructions and definitions to help you in answering the questions to follow.

3

## CLAIM INTERPRETATION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because the words of the claims, as interpreted by the Court, are what define the boundaries of the invention. The figures and text in the rest of the patent provide a description and at least one example of the invention (sometimes referred to as a "preferred embodiment"), and they provide a context for the claims.Claim terms are to be read and understood in the context of the particular claims in which they appear and in the context of the entire patent, including the specification. But it is the claims themselves, as interpreted by the Court, that define how broad or narrow the patent's coverage is. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

## HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain further how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a a product meets all of the requirements of a claim, the claim is said to "cover" that product, and the product is said to "fall within the scope" of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the

meaning of the words in the claims and the requirements those words impose. You must apply the meaning I give the patent claims to both your decision on infringement and your decision on validity. I will now provide to you my definitions of certain claim terms and will instruct you on how those terms are to be understood when deciding the issues of infringement and validity in this case. You must accept my definitions of these words in the claims as being correct.

You have been provided with a copy of the '529 Patent and a copy of the claim term definitions, and you may use them in your deliberations. The asserted claims are as follows: Claim 1.

[Preamble] An energy conversion device employing an oscillating resonant converter producing oscillations, having DC input terminals producing a control signal and adapted to power at least one gas discharge lamp having heatable filaments, the device comprising:

[A] voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals;

[B] output terminals connected to the filaments of the gas discharge lamp;

[C] control means capable of receiving control signals from the DC input terminals and from the resonant converter, and operable to effectively initiate the oscillations, and to effectively stop the oscillations of the converter; and

[D] direct current blocking means coupled to the output terminals and operable to stop the flow of the control signal from the DC input terminals, whenever at least one gas discharge lamp is removed from the output terminals or is defective.

Claim 2.    The device according to claim 1 wherein the resonant converter comprises a capacitor and an inductor connected in series via an intermediate node.

Claim 5.      The device according to claim 1 wherein the direct current blocking means includes a capacitor and is connected effectively across at least one heatable filament of at least one gas discharge lamp.

## "COMPRISING" CLAIMS

I will now explain how to consider a situation where an asserted claim uses the term "comprising." In this instance, Claim 1 of the '529 patent uses the word "comprising." When a claim uses the word comprising, it means including or containing.  A claim that uses the word comprising or comprises is not limited to products having only the elements that are recited in the claim but also covers products that add additional elements.

This is relevant in this case because the preamble to Claim 1 uses the phrase "An energy conversion device employing an oscillating resonant converter producing oscillations, having DC input terminals producing a control signal and adapted to power at least one gas discharge lamp having heatable filaments, the device comprising:."

If you find that Defendant's products include all of the elements of Claim 1, the fact that Defendant's products might include additional components would not avoid infringement of a claim that uses "comprising" language.

## CLAIM CONSTRUCTION

I have construed or interpreted certain of the terms of the asserted claims to have the following meanings, which you should accept and apply in deciding this case:

As used in the Preamble of Claim 1, the phrase "oscillating resonant converter producing oscillations" is defined as "a circuit, or portion of a circuit, containing inductance, capacitance, and at least one electronic switching device (such as a transistor) that operates to convert direct current into alternating current."

As used in the Preamble of Claim 1, the phrase "DC input terminals" is defined as "terminals for receiving a DC supply voltage." The phrase "producing a control signal" is defined as "serving as the origin of direct current that travels along a direct current path from the DC input terminals, through the filament or filaments, and to an input terminal of the control means, but which does not pass through the DC blocking means." This control signal from the DC input terminals is sometimes referred to as the "DC control signal."

As used in Element A of Claim 1, the phrase "voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals" refers to "a rectifier."

Some of the requirements of Claim 1 are written in a different format called "means-plus-function," which I will now explain.

## MEANS-PLUS-FUNCTION CLAIMS

Along with the terms I just described, there are certain claim requirements that are written in what is called "means-plus-function" format, including the "control means" requirement and the "direct current blocking means" requirement. The patent laws permit requirements of a claimed invention to be expressed simply as a "means" or "way" for performing a certain function, without reciting in the claim the physical structure that actually performs the claimed function. Such "means-plus-function" requirements do not cover all of the structures that could perform the function set forth in the claim. Instead, they cover only the structure disclosed in the patent's specification to perform the claimed function and equivalents of that disclosed structure. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures are "equivalent" to one another. I have identified the structures described in the '529 patent that perform the functions recited in the means-plus-function requirements. You should apply my definitions of the functions and the

structures described in the '529 patent for performing those functions, just as you must apply my definitions of any other claim terms.

There are two claim requirements in Claim 1 that use the means-plus-function format. The first requirement that is written in means-plus-function format is "control means capable of receiving control signals from the DC input terminals and from the resonant converter, and operable to effectively stop the oscillations of the converter."

This "control means" requirement recites four functions, as follows:

(1) control means

    (a) capable of receiving a control signal from the DC input terminals and;

    (b) operable to effectively initiate the oscillations, and;

(2) control means

    (a) capable of receiving a control signal from the resonant converter, and;

    (b) operable to effectively stop the oscillations.

The corresponding structure for the "control means" requirement is the control circuit (58) described at column 3, line 59 through column 4, line 21 of the '529 Patent.

The second requirement of Claim 1 that uses the means-plus-function format is the "direct current blocking means" requirement. The claimed function of the "direct current blocking means" is "operable to stop the flow of the control signal from the DC input terminals, whenever the DC control path through the filaments is broken due to lamp removal or a broken filament." The corresponding structure for the "direct current blocking means" requirement is as follows: "DC blocking capacitors (08 and 25) connected to the heatable filaments of the lamp."

All other words of the claims have their plain and ordinary meanings, as those words would be understood by a person of ordinary skill in the field, when read in the context of the patent

specification and claims.  I will now instruct you on what is meant by a person of ordinary skill in the art.

**LEVEL OF ORDINARY SKILL IN THE ART**

A person of ordinary skill in the art is a person with a specific level of education, training, and experience in the field such that they understand what is being taught by a patent based on such background.  It is up to you to decide the level of ordinary skill in the field of the invention.  You should consider all of the evidence introduced at trial in making this decision, including: the educational level and experience of people working in the field, the types of problems faced by workers in the field and the solutions found for those problems, and the sophistication of the technology in the field.

Plaintiff contends that, for this case, the hypothetical person of ordinary skill in the relevant field is a  person who, as of February 1, 1993, would have had:

(a) a bachelor's degree in electrical engineering degree, or equivalent, and five years of experience in electronic ballast design, or five years experience in power electronics with one year experience in ballast design; or

(b) a Master's degree in electrical engineering or equivalent, and two years experience in electronic ballast design, or two years of experience in power electronics with one year experience in electronic ballast design.

A person of ordinary skill in the art would also understand the basic electrical characteristics of fluorescent lamps, the practical application of electronic ballasts in the marketplace, key regulatory requirements that impact the use of electronic ballasts, and at least some knowledge of the products available from various vendors.

Defendant contends that a person of ordinary skill in the relevant field for purposes of this

case is a hypothetical person who, as of February 1, 1993:

> had a bachelor of science degree in electrical engineering, or an equivalent degree, and three to five years of experience in the field of lighting technology.  This definition is flexible in that more advanced educational degrees could substitute for the specified industry experience and more extensive industry experience could substitute for the specified educational background.

Next, I will instruct you on how to determine whether the '529 Patent has been infringed by ULT.

## DETERMINING INFRINGEMENT

Once a patent has issued, infringement can occur if a person or entity, without the owner's permission, makes, uses, offers to sell, or sells the patented invention anywhere in the United States during a period of 20 years measured from the filing date of the earliest underlying patent application.  In this case, the 20-year exclusivity period of the '529 Patent ends in 2013.

Plaintiff has alleged that Defendant directly infringes the '529 Patent.   To prove infringement of any claim, the Plaintiff has the burden to persuade you by a preponderance of the evidence that the Defendant has infringed that claim.

When comparing claims, the Plaintiff need not prove that the Defendant had the intent to infringe the patent or that it knew its acts infringed the patent.   Good faith is not a defense to a claim of infringement.

Keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the Defendant's products to determine whether or not there is infringement. When comparing the claims to Defendant's products, you must consider each claim and each product individually, and you must reach your decision

regarding infringement based on my instructions about the meaning and scope of the claims as they have been defined, the legal requirements for infringement, and the evidence presented to you by the parties. I will now describe for you the legal requirements for infringement.

## INFRINGEMENT GENERALLY

I will first instruct you on what infringement means in a general sense. Then I will identify several key elements that make up infringement. In order to infringe a patent claim, a product must meet all the requirements of a claim. A claim limitation is present if it exists in the Defendant's product as I have explained the language to you or, if I did not explain it, as it would be understood by one of ordinary skill in the art, as understood in the context of the patent claims and specification.

You should consider each of the asserted claims of the '529 Patent separately. However, not all claims of a patent must be infringed for LBC to establish infringement. Plaintiff need only establish by a preponderance of the evidence that one claim is infringed.

## INFRINGEMENT

A patent claim is infringed if the Defendant's product satisfies each and every requirement of that patent claim. If the Defendant's product does not satisfy one or more requirements of a claim, the Defendant does not infringe that claim.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe. The same element of the accused products may satisfy more than one requirement of a claim.

As I have instructed you, the asserted claims include two requirements, or limitations, that use the means-plus-function format: the "control means" requirement and the "direct current

11

blocking means" requirement. To prove that an accused product satisfies a means-plus-function requirement, a patent owner must prove two things by a preponderance of the evidence.

First, an accused product needs to contain a structure that performs the same function as the function recited in the claim requirement. Second, the structure of the accused product that performs that function must be the same as or "equivalent" to the corresponding structure disclosed in the patent specification for performing that recited function. If you find the same or an equivalent structure in the accused product, the requirement is satisfied by that product for purposes of infringement.

The equivalent structure determination must be decided from the perspective of a person of ordinary skill in the art. A structure is "equivalent" if the hypothetical "ordinary skilled person" would consider the differences between the accused structure and the structure in the patent specification to be "insubstantial."

One way to determine whether the differences between the two structures are "insubstantial" is to determine whether or not the accused structure performs the same function, in substantially the same way, to achieve substantially the same result as the structure disclosed in the patent specification. In deciding whether the differences would be "insubstantial," you may also consider whether or not persons of ordinary skill in the field of the invention believed that the structure disclosed in the specification and the structure of the accused product were interchangeable at the time the '529 Patent was issued, though interchangeability of one structure for another does not suffice to show that those structures are equivalent. The structure in the accused product must also have been available at the time the '529 Patent issued.

## INDEPENDENT AND DEPENDENT CLAIMS

My instructions so far have related to independent claims. Patent claims may exist in two forms, referred to as independent and dependent claims. An independent claim does not refer to any other claims of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claim 1 of the '529 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claim to which it refers, as well as the additional requirements recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim to which it refers.

Claims 2 and 5 are dependent claims. Both of these claims refer to Claim 1. To determine what a dependent claim covers, the words of that dependent claim and the claim to which it refers must be read together.

Because a dependent claim includes all the requirements of the independent claim to which it refers, if you find that claim 1 is not infringed, then you cannot find that claim 2 or claim 5 is infringed.

## WILLFUL INFRINGEMENT

In this case, Plaintiff contends that Defendant infringed and, further, that Defendant infringed willfully. If you have decided that Defendant has infringed a claim or claims and the claims is/are valid, you must go on and address the additional issue of whether or not this infringement was willful. The mere fact that the Defendant infringed the patent is not enough to prove willfulness.

To prove willful infringement, the Plaintiff must prove by clear and convincing evidence that Defendant acted recklessly. To prove Defendant acted recklessly, the Plaintiff must satisfy a two-part test. The first part of this test is objective. I will explain this further in a moment. The second part is subjective, which means that you must attempt to ascertain the Defendant's state of mind.

First, Plaintiff must prove that the Defendant acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The Defendant's state of mind is not relevant for this part of the inquiry. Here, you should focus on whether a reasonable person in the position of the Defendant, after learning of the patent, could have reasonably believed that he or she did not infringe or that the patent was invalid. Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness. If you conclude that a reasonable person in the Defendant's position could not have held such a belief, then you must proceed to the second part of the test.

The second part of the test looks at the Defendant's state of mind. If you find that the Defendant proceeded in the face of an unjustifiably high risk, then you must determine whether that risk was known or obvious to the Defendant. The Plaintiff must prove that the Defendant actually knew, or it was so obvious that the Defendant should have known, that its actions constituted infringement of a valid patent. In deciding whether the Defendant's actions satisfied this second part of the test, you should consider all of the facts surrounding the alleged infringement.

In making the determination as to willfulness, consider all the facts surrounding the alleged infringement, including but not limited to the following:

(1)     whether the Defendant acted in a manner consistent with the standards of commerce for its industry;

(2)     whether or not there is a reasonable basis to believe that Defendant did not infringe or had a reasonable defense to infringement;

(3)     whether or not Defendant made a good-faith effort to avoid infringing the '529 patent, for example, whether Defendant attempted to design around the '529 patent; and

(4)     whether or not Defendant tried to cover up its infringement.

**VALIDITY**

Defendant contends that the asserted claims of Plaintiff's Patent are not valid.  Patent invalidity is a defense to patent infringement.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that Defendant bears the burden of proving that it is highly probable that the claims are invalid.

Each claim of a patent issued by the United States Patent Office is entitled to a presumtion of validity.  In order to overcome the presumption of validity,  Defendant must show it is highly probable the asserted claims of the patent are invalid. In deciding whether Defendant has met this "highly probable" burden, you may afford greater weight to "prior art" that was not considered by the Patent Office prior to issuing the patent.

**PRIOR ART**

What came before the invention is referred to as "prior art." The Defendant is relying on various items of prior art. In order to do so, the Defendant must prove that the items fall within one or more categories of prior art recognized by the patent laws. These categories include:

(1)     anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention; and

(2)     anything that was patented or described in a printed publication anywhere in the world before the date of the invention, or more than one year before the effective filing date of the patent-in-suit.

In this case, the prior art is limited to the following: JP 61-153997 ("JP '997"), and JP 3-53799 ("JP '799"). You must decide whether any of these items, considered separately, serve to invalidate the asserted claims of the '529 Patent.

I'm now going to instruct you further on the invalidity defenses that you will have to evaluate in this case. You may consider the following invalidity defenses and no others.

### ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, the Defendant must prove by the clear and convincing evidence that the claimed invention is not new.

Anticipation must be determined on a claim-by-claim basis. In this case, the Defendant contends that all of the asserted claims of the '529 Patent are anticipated. To anticipate a claim, each and every requirement of the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of

the requirements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular publication.  The prior art does not have to use the same words as the claim, but the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

### DAMAGES

If you find the Defendant has infringed any of the asserted claims of the '529 Patent and that the claims are valid, then you should consider the amount of money Plaintiff should receive as damages.  Plaintiff has the burden of proving the amount of damages caused by the Defendant's infringement by a preponderance of the evidence.

Even though I am instructing you on how you should measure damages, this should not be taken to mean that I believe the Defendant has infringed or that the patent is valid.  These are issues for you to resolve under the instructions I have given you.  I am instructing you on damages only so that you will have guidance should you decide that Plaintiff is entitled to recover damages.

If you find that there has been infringement, then Plaintiff is entitled to an award of damages adequate to compensate him for the infringement, but in no event less than a reasonable royalty for the use Defendant made of the invention.  Here, the Plaintiff is asking for damages in the form of a reasonable royalty.

The amount of damages the Plaintiff can recover is limited to those acts of infringement by the Defendant that occurred within the six-year period preceding the date this lawsuit was filed, or that occurred since the date the Defendant had notice that it infringed the '529 Patent, whichever

period is shorter.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the '529 Patent.  This notice is effective as of the date given.

Constructive notice means that the patent holder complied with the marking requirement of the patent laws.  "Marking" means that substantially all of the products made, offered for sale, or sold under the '529 Patent are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  The Plaintiff has the burden of establishing substantial compliance with the marking requirement.  To do so, the Plaintiff must show it is more probable than not that substantially all of the products made, offered for sale, or sold under the '529 Patent were marked, and that the patent holder made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '529 Patent marked substantially all of their products.

Your job is to calculate damages from the date the Defendant received either actual or constructive notice, whichever was first.  You should not award damages for any infringement by the Defendant occurring before it first received actual or constructive notice of the '529 Patent.

The Defendant contends that the marking requirement was not complied with, and so the Plaintiff cannot be awarded damages for any infringement before receipt of actual notice.  LBC contends that the marking requirement was complied with prior to ULT receiving actual notice, and so it should be awarded damages from February 3, 2003, which is the date that is six years before this lawsuit was filed.

Generally, a reasonable royalty is defined in the patent law as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the

owner should expect to receive.  A royalty is a pamyent made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first allegedly infringed the patent and the facts that existed at the time.

Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.  Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity.  The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.  You are to assume that both parties to that hypothetical negotiation understood the patent to be valid and infringed and that the licensee would respect the patent.  In addition, you must assume that the patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining a reasonable royalty rate, you should consider all of the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determinations are:

(1)     whether the patent holder had an established royalty for licensing the invention;

(2)     the nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of an inventor and promoter;

(3)     the established profitability of the patented product, its commercial success and its popularity at the time;

(4)     whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5)     the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(6)     the rates paid by the licensee for the use of the other patents comparable to the Plaintiff's patent;

(7)     whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

(8)     the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(9)     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

(10)    the extent to which the infringer used the invention and any evidence probative of the value of such use;

(11)    the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12)    the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)    the opinion and testimony of qualified experts;

(14)    any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normal, prudent business people.

You must not award Plaintiff more damages than are adequate to compensate for the infringement nor should you include any additional amount for the purpose of punishing the Defendant or setting an example. You may not include damages that are speculative, damages that are only possible, or damages that are based on guesswork.

## FINAL INSTRUCTIONS

Nothing that I may have said or done during the course of this trial is intended to indicate any view of mine as to which party should, or should not, win this case. As I instructed you previously, the jury is the sole judge of the credibility of the testimony and the weight to be given the evidence.

These instructions are given to you as a whole, and you are not to single out one instruction alone as stating the law but must consider the instructions as a whole. You have heard all of the evidence in the case, and you have heard the arguments of counsel. The Court has given you the

charge in this case.  In a few moments, you will retire to the jury room, select one of your members to act as a foreperson, and begin performing the function for which you have been chosen and for which you have been empanelled, in accordance with the oath you took as jurors.  You will remember that at the beginning of the trial, the Court admonished you not to discuss the case with each other until it was submitted to you.

Now is the time for you to begin your discussion, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth, and which does justice to all parties without favor, bias, or prejudice in any particular way, either for or against any party to this lawsuit.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion if convinced it is erroneous.  But, do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  Your verdict must be unanimous.  As soon as you have reached a verdict, you will let this fact be known to the officer who will be waiting upon you and he will report to the court.

Your verdict will be in the form of Questions for you to answer.  You will take these Questions to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form and then advise the Court Security Officer that you have reached a verdict.  During your deliberations, you may have any of the exhibits that have been offered into evidence, and the Court will send them to you upon written request.  If you desire further instructions, your foreperson may make this known in writing, and

the Court will try to comply with your wishes.  All communications with the Court must be in writing, but at no time should you indicate to the Court or to anyone else how the jury is divided in answering any particular Question.

You will now go to the jury room, select one of your members as foreperson, and begin your deliberations.

You may now retire to the jury room to conduct your deliberations.

**SIGNED this 17th day of June, 2011.**

REED O'CONNOR
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.  7:09-CV-00029-O |
| v. | § § | **JURY TRIAL DEMANDED** |
| UNIVERSAL LIGHTING TECHNOLOGIES, INC., | § § § | |
| Defendant. | § § § | |

## VERDICT FORM

### Section No.  I – Question Regarding Infringement

**QUESTION NO.  1 – INFRINGEMENT OF THE '529 PATENT**

Do you find by a preponderance of the evidence that the ULT products listed below have infringed Claims 1, 2, or 5 of the '529 Patent? Answer "YES" or "NO" as to each product and each claim.

| Products | Claim 1 | Claim 2 | Claim 5 |
|---|---|---|---|
| Linear Group 1 (B254PUNV-D (Gen D) | Yes | Yes | Yes |
| Linear Group 2 (B224PUNV-C (Gen A)) | Yes | Yes | Yes |
| Linear Group 3 (B332PUNVHP-A (Gen A)) | Yes | Yes | Yes |
| Linear Group 4 (B228PUNV115-D, Gen C)) | Yes | Yes | Yes |
| CFL Group 1 (C2642UNVxxx (Gen E)) | Yes | Yes | Yes |
| CFL Group 2 (C213UNVxxx (Gen E)) | Yes | Yes | Yes |
| ES Group (Product TBD) | Yes | Yes | Yes |

**Section No.  II – Question Regarding Invalidity**

*If you have answered "NO" to all of Question 1 you do not need to consider the question*

*below.  If you have answered "YES" to any part of Question 1, then for each claim that you have*

*entered such an answer, you must respond to the question below.*

## QUESTION NO.  2 – ANTICIPATION

Do you find by clear and convincing evidence that any of the following claims of the '529

Patent are invalid as anticipated?  Answer "YES" or "NO" as to each reference and each claim:

| Prior Art Reference | Claim 1 | Claim 2 | Claim 5 |
|---|---|---|---|
| JP '997: | No | No | No |
| JP '799: | No | No | No |

**Section No. III – Questions Regarding Damages and Willfulness**

**QUESTION NO. 3 – DAMAGES**

*Please answer the following question only if you answered "YES" to any part of Question 1 and you answered "NO" for the same claim for Questions 2.*

What sum of money, if any, do you find from a preponderance of the evidence is adequate to compensate Plaintiff for Defendant's conduct that you found to infringe? Provide the amount, if any, in dollars and cents.

$ _3,000,000.00_

**QUESTION NO. 4 – WILLFUL INFRINGEMENT**

*Please answer the following question only if you answered "YES" to any part of Question 1 and*

*you answered "NO" for the same claim for Questions 2.*

> For any of the following claims for which you answered "YES" to any product in Question
>
> 1, do you find by clear and convincing evidence that such infringement was willful?

Answer "YES" or "NO":    NO

You are finished.  The Jury Foreperson should sign on the space provided at the end of this charge and then alert the Court Security Officer that you have reached a verdict.

**Certification of Jury Verdict**

> The foregoing is the unanimous verdict of the jury.

Dated:  6-17-20011

_____
Jury Foreperson

Judy Freeman
Printed Name of Foreperson

27